Weldon M. **KENNEDY** et al., Plaintiffs,

v.

Lenard F. **MEACHAM**, Warden, et al.,
Defendants.

No. C74–169.

United States District Court,
D. Wyoming.

Oct. 10, 1974.

*Judge's Memorandum*

KERR, District Judge.

Plaintiffs, inmates confined in the Wyoming State Penitentiary, have filed their complaint seeking injunctive and declaratory relief and damages pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 2201 and § 2202. It appears that the Court has jurisdiction. Plaintiffs have also filed a Motion for Disqualification of Judge and a Motion for Leave to Proceed in Forma Pauperis and for Appointment of Counsel. The Court will treat the matters in sequence.

Plaintiffs have filed affidavits in support of their Motion to Proceed in Forma Pauperis stating they are unable to pay the costs of this action or give security therefor. Under the guidelines of 28 U.S.C.A. § 1915, the motion will be granted. In conjunction with the motion, plaintiffs also seek appointment of counsel of their choice to represent them in this matter. 28 U.S.C.A. § 1915(d) states, "The court *may* request an attorney to represent any such person unable to employ counsel . . . ." (emphasis supplied) There exists no statutory or constitutional right for an indigent to have counsel appointed in a civil case, and this is especially true where an action does not have any of the characteristics of being essentially criminal or penal in nature. See Peterson v. Nadler, 452 F.2d 754 (8th Cir. 1971); Note, The Indigents Right to Counsel in Civil Cases, 76 Yale L.J. 545 (1967); 98 A.L.R.2d 292. Absent unusual circumstances an indigent civil litigant is not entitled to have an attorney assigned to assist him in his litigation. Ordinarily the power of appointment rests in the discretion of the Court. See Ehrlich v. Van Epps, 428 F.2d 363 (7th Cir. 1970); Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969). The Court may determine whether the claims of the civil action have any merit before appointing counsel. This the Court has done. That portion of the motion seeking to have counsel appointed should be denied.

Plaintiffs have filed a motion seeking to disqualify the Judge of this District pursuant to 28 U.S.C.A. § 144. Plaintiffs have filed timely affidavits in support of their motion. In essence, plaintiffs base their motion on their be-

lief that they would be prejudiced due to the disposition of numerous other actions filed in this Court, all of which have been held to be frivolous and none having been reversed by the appellate court. They allege that the prior adverse decisions of this Court evidence bias against the plaintiffs and that their actions have not received prompt consideration by this Court. The Court is well aware of its duty to pass on the legal sufficiency of the affidavits without regard to the veracity of the allegations. See Bradley v. School Board, 324 F.Supp. 439 (D.C.Va.1971). An affidavit in support of a motion for disqualification of a judge must show a bent of mind that may prevent or impede impartiality. See Wapnick v. United States, 311 F.Supp. 183 (D.C.N. Y., aff'd. 423 F.2d 1361 (2nd Cir. 1970). Adverse rulings suffered by a party are not grounds for disqualification. See United States v. Roca-Alvarez, 451 F.2d 843 (5th Cir. 1971). Recusal cannot be based solely on such prior decisions. The Court realizes that delays may occur but, by the same token, the Court has attempted to achieve prompt disposition of plaintiffs' prior actions. To deny even the bare opportunity to process a claim for an indefinite period could well render the legal process meaningless for plaintiffs, see County of Allegheny v. Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), and thereby amount to a denial of due process. The Court has attempted to expedite plaintiffs' prior actions taking into account the normal press of other litigation which demands the Court's attention. The allegations are insufficient and the motion for disqualification of judge will be denied.

Finally, the Court turns its attention to the gist of the action—the complaint —filed by plaintiffs. Litigants claim to be members and practitioners of the "Satanic religion." They claim that they have been denied the opportunity to disseminate information regarding their spiritual beliefs to other inmates. Specifically, plaintiff Kennedy claims he was barred from posting information regarding the tenets of their religion on the prisoner bulletin board, although he was not barred from placing the material on a shelf underneath the bulletin board. Plaintiffs allege they have not been allowed to retain articles which they deem necessary to the practice of their religion in their cells. These items include such esoteric articles as a "baphomet" which symbolizes Satan, bells, candles, pointing sticks, gongs, incense, and black robes. Plaintiffs also claim they have been denied the right to conduct religious study groups and ceremonies.

The Constitution of the United States provides for freedom of religious worship. The First Amendment to the United States Constitution declares, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." This provision is equally applicable against the states through incorporation into the Fourteenth Amendment. See also Wyo.Const. Art. 1, § 18. Yet, while the proviso respecting freedom of belief has been held to be absolute, the freedom of exercise is not and must be considered in light of the general welfare. See Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1879). The latter proviso is applicable to penal institutions. "Laws are made for the government of actions and, while they cannot interfere with mere religious belief and opinions, they may with practice. Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government could not interfere to prevent a sacrifice?" Reynolds, 98 U.S. at 166.

A convict, upon incarceration, does not forfeit all his civil liberties, nor do the walls of a penitentiary

create an iron curtain impenetrable by the beneficent effects of the Constitution. See Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). Yet, the discipline required to maintain the proper functioning of the prison community may curtail such liberties. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Constitutional rights are thus subject to proper limitations.

■ Courts are not required to supervise the administration of prison rules, regulations, and disciplinary procedures. To do so would effectively disrupt prison administration and contravene public policy. Such matters are left to the discretion of prison authorities so long as their conduct does not involve deprivation of the prisoners' constitutional rights and is not clearly capricious or arbitrary. See Graham v. Willingham, 265 F.Supp. 763 (D.C.Kan.), aff'd 384 F.2d 367 (10th Cir. 1967).

■ Plaintiffs have not, it appears, been denied their right of belief. Strictures have been placed on how they may practice their religion. They have been allowed to practice their religion in a manner apparently viewed as necessary under the conditions of a penal institution. A prison society is a sensitive and explosive one. The restrictions do not appear to be capricious or arbitrary. Their civil liberties have been curtailed in order to maintain this delicate balance. Also, it does not appear that plaintiffs contend they have been denied any privileges afforded to other religious sects so as to raise an issue of equal protection. See Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Based on the foregoing, the complaint, together with the cause, will be dismissed.

An order will be entered in accordance with this opinion.