Chauncey Roscoe VAUGHN, Plaintiff,

v.

Sam P. GARRISON and B. R. Watson, Defendants.

No. 80–654–CRT.

United States District Court, E. D. North Carolina, Raleigh Division.

Oct. 21, 1981.

Chauncey Roscoe Vaughn, pro se.

Rufus L. Edmisten, Atty. Gen. of N. C., by Jacob L. Safron, Sp. Deputy Atty. Gen., Raleigh, N. C., for defendant.

## ORDER

LARKINS, Senior District Judge:

### SUMMARY

THIS MATTER comes before this Court on plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 against defendants Garrison and Watson alleging infringement of his constitutional rights and seeking $250 million from each defendant. Defendants timely filed motions to dismiss and for summary judgment with accompanying affida-vits, which will be treated by this Court as a motion for summary judgment.

After careful independent review of the pleadings herein, IT IS THE OPINION OF THIS COURT THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND PLAINTIFF'S CASE BE DISMISSED.

### FINDINGS OF FACT

Plaintiff filed this Section 1983 complaint against Sam P. Garrison, Warden of North Carolina Central Prison, and B. R. Watson, Superintendent for Custody at Central Prison, in Raleigh, North Carolina. Plaintiff specifically alleges that his First Amendment right to religious freedom was denied because he was informed that he could only order a prayer rug from approved vendors and "was also informed that [he] must submit a reply to the dietary policy, which has no concern with the purchase of the prayer rug. . ."

On December 15, 1980, defendant filed a motion to dismiss or in the alternative one for summary judgment with supporting affidavits filed later, which motion will be treated as one for summary judgment. On January 27, 1981, plaintiff responded to defendants' motion and filed a motion for summary judgment with a supporting affidavit.

### CONCLUSIONS OF LAW

Plaintiff claims that his First Amendment right to religious freedom was denied because: (1) he should not be required to submit a written request for a non-pork diet as a prerequisite to ordering a prayer rug since there is no rational basis for such requirement; and (2) he was informed that he could only order a prayer rug from vendors approved by the prison.

On July 15, 1980, plaintiff submitted a letter to defendant Watson, stating that he had placed an order for a prayer rug from the Ansaru Allah Community at 716 Bushwick Avenue, Brooklyn, New York. By Affidavit, Watson testified that before a prisoner could order a prayer rug, two qualifi-

nations had to be met. First, an inmate had to be identified as a member of the Islamic Faith. Such identification required that inmates have submitted a written request to be permitted to receive a non-pork diet as is required by Division of Prison rules codified as 5 NCAC 2E.0102(b). Second, by Administrative letter from the Director of the Division of Prisons dated November 27, 1979, the inmates could request prayer rugs from two distributors—the Islamic Center, Washington, D. C. and Kazi Publications, Chicago, Illinois. A third distributor, Crescent Imports and Publications, Ann Arbor, Michigan, was approved as a distributor for prayer rugs in October, 1980.

Defendant also submitted the Affidavit of R. A. L. Walker, an ordained minister serving as head of the Chaplaincy Services for the Division of Prisons, who testified that he and Chaplain Matthew B. Hamidullah, who served as full-time Islamic Services Coordinator, were consulted on which prayer rug distributors should be chosen to fill orders. Chaplain Hamidullah recommended Islamic Center of Washington, D. C. and Kazi Publications of Chicago, Illinois, because Kazi had associations with the American Muslim Mission and the Islamic Center is a reputable information and distribution agency of international standing. Walker further testified that Crescent Imports and Publications was added to the list of distributors to give additional variety to prayer rugs that could be ordered. The number of distributors was restricted to insure security and institutional good order.

■ Plaintiff challenges the prison procedure that before he is allowed to order a prayer rug, he must submit a written request for a non-pork diet to qualify him as a member of the Islamic faith. The practice of the Islamic Faith forbids its members to eat food containing pork. *See Carroll v. Brown*, 560 F.2d 1177 (4th Cir. 1977). This religious practice is one of the criteria to determine whether an individual is a practicing Muslim. The requirement that an inmate submit a request for a pork free diet in order to be considered as a Muslim qualified to receive a prayer rug is a *rational requirement* fully supporting the inmate's ability to practice his professed religion and is not a violation of his constitutional rights. *Cf., Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Kennedy v. Meachum*, 382 F.Supp. 996 (D.Wyo.1974).

Defendant submitted a copy of an Administrative letter number 8 dated November 27, 1979, which stated that inmates who practice the Islamic religion and have notified the unit superintendent or institutional head of such practice, may order a prayer rug. If an inmate wanted to practice the Islamic Faith and, thus, qualify for a prayer rug, he had to submit a written request to the Superintendent for a non-pork diet. B. R. Watson testified in his Affidavit that such requirement was mandated by Division of Prison rules codified as 5 NCAC 2E.0102(b). The rationale behind such requirement is to eliminate frivolous requests for prayer rugs by inmates who are not sincere in their practice of the Islamic Faith.

■ This Court is not required to supervise the administration of prison rules, regulations, and disciplinary procedures. Such matters are left to the discretion of prison authorities so long as their conduct does not involve deprivation of the prisoner's constitutional rights and is not clearly capricious or arbitrary. *Kennedy v. Meachum, supra.*

This Court, therefore, holds that the procedure as codified in 5 NCAC 2E.0102(b) is a rational requirement for qualification as a Muslim and is not clearly capricious or arbitrary. It insures that genuine members of the Islamic Faith will be allowed to practice the mandates of their religion while frivolous and insincere requests for prayer rugs are eliminated. The record reveals that plaintiff failed to submit a written request for a non-pork diet as required by 5 NCAC 2E.0102(b). Thus, the legitimacy of plaintiff's acknowledgment as a Muslim is doubtful and his request for a prayer rug questionable. Since plaintiff failed to comply with this reasonable requirement, his contention is without merit.

Plaintiff's second claim is that his First Amendment right to religious freedom was denied because he was informed that he could only order a prayer rug from approved vendors. This Court disagrees. Although a prisoner retains substantial First Amendment rights despite his incarceration, *Brown v. Peyton*, 437 F.2d 1228 (4th Cir. 1971), the prison authorities may nevertheless "adopt any regulations dealing with the exercise by an inmate of his religion that may be reasonably and substantially justified by considerations of prison discipline and order." *Sweet v. South Carolina Department of Correction*, 529 F.2d 854, 863 (4th Cir. 1975). In seeking a "mutual accommodation between institutional needs and objectives [of prisons] and the provisions of the Constitution that are of general application", *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), this Court, has repeatedly recognized the need for major restrictions on prisoners' rights... These restrictions have applied as well where First Amendment values were implicated.

Defendant submitted the Affidavit of Chaplain Walker who testified that two distributors were designated from which the prison could order prayer rugs to insure security and institutional good order. He further testified that:

> If prayer rugs were to come from any source named by any inmate, security would tend to be weakened or an additional administrative burden would fall to prison staff in investigating each additional distributor that was requested. I believe that limiting the orders of prayer rugs to known, reliable distributors is reasonable as an effort to insure that contraband is not mailed into the institution, and is an effort to lessen the burden on prison staff in order to provide security.

Chaplain Walker added that a third distributor was added to give additional variety and price range to the prayer rugs that could be ordered.

Defendant also submitted the Affidavits of B. R. Watson and Warden Garrison who concurred with Chaplain Walker as to the necessity for this procedure. Warden Garrison concluded that he believed

> it is necessary to restrict orders for and receipt of prayer rugs to those inmates who have identified themselves as practicing members of the Islamic Faith since it can serve as an item to hide contraband and also cause a storage problem. It is in the interest of institutional security and orderly administration to limit the receipt of prayer rugs to those who profess to have a legitimate need for them.

Based on these affidavits of persons who are in a position to determine the results of the failure to execute such procedure, this Court holds that said procedure, whereby inmates are required to request prayer rugs from companies designated by the prison, is a rational requirement which prevents the additional influx of contraband, promotes the orderly administration of rugs to persons who have a legitimate need for them, eliminates storage problems and reduces the burdens on the prison staff to screen and search for contraband. Therefore, since this regulation of plaintiff's exercise of his freedom of religion is reasonable and substantially justified to promote prison discipline and order, plaintiff's second claim is without merit. *Sweet v. South Carolina Department of Correction, supra.*

### ORDER

Based upon the foregoing findings of fact and conclusions of law, IT IS THEREFORE ORDERED THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS DENIED AND HIS COMPLAINT DISMISSED.