Daniel **ROSS** et al., Appellants,

v.

Dr. Stanley **BLACKLEDGE** et al., Appellees.

No. 73–1314.

United States Court of Appeals, Fourth Circuit.

Submitted Jan. 30, 1973.

Decided March 27, 1973.

Before SOBELOFF, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

Six North Carolina prisoners, who are members of the Islamic, a Black Muslim faith, seek injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1985 to compel prison authorities to provide them with the pork-free diet required by the tenets of their religious faith. They allege that they cannot obtain a balanced diet by eating only non-pork items because of the frequency with which pork appears as the only meat on the prison menu and because most vegetables are cooked in or seasoned with pork. And, adducing the failure of prison officials to provide them with a "special diet on the same basis as the correctional prisoners who are on ulcer diet," the prisoners proffer an equal protection argument as an additional basis for the relief sought.

Initially, the District Court denied a motion to dismiss, directing instead that the State demonstrate that an adequate diet could be maintained by eating only non-pork items and that the State respond to the equal protection allegation. After the State's submission of a supplemental memorandum and supporting affidavits, the District Court granted a motion to dismiss without ever holding an evidentiary hearing.

In its Memorandum Opinion and Order, the District Court said that "[t]he affidavits and menus *clearly show* that the plaintiffs can receive more than adequate nourishment from other foods and that the defendants are providing ample pork free meals and foods" (emphasis added). The court also found that the "record clearly shows" that a rational basis existed for providing a separate diet for prisoners with ulcers but not for Black Muslims. We conclude that the District Court erred in granting summary dismissal and therefore vacate its judgment and remand the case for an evidentiary hearing.

Daniel Ross, pro se.

Jacob L. Safron, Asst. Atty. Gen., for appellees.

In Abernathy v. Cunningham, 393 F. 2d 775, 778 (4 Cir. 1968), this court held that where the District Court found after "an extensive evidentiary hearing" (p. 777) that Muslim prisoners could obtain a balanced ration while avoiding pork and food prepared with pork, the state was not required to provide a separate pork-free diet. Subsequently, in a case involving the attempt of Muslims to secure First Amendment rights, we held that the state may only restrict a prisoner's desire to practice religion "upon a convincing showing that paramount state interests so require. * * * The burden is not met merely by the filing of an answer which controverts the allegations of the complaint or which relies solely on our previous decision in Abernathy v. Cunningham, *supra*." Brown v. Peyton, 437 F.2d 1228, 1231 (4 Cir. 1971).

The value of a full evidentiary hearing is exemplified by Barnett v. Rodgers, 133 U.S.App.D.C. 296, 410 F.2d 995 (1969), which dealt with Black Muslim demands for at least one full-course, pork-free diet per day. The District Court initially dismissed the petitions without a hearing. The dismissal was vacated upon appeal, counsel appointed and an extensive evidentiary hearing held that enabled the District Court to develop a full and complete record. Only examination and cross-examination of witnesses brought out the prevalence of pork in the prison diet. See Abernathy v. Cunningham, *supra*, 393 F.2d at 780 (Craven, J., concurring and dissenting). Witnesses for the Muslims testified that pork was used to prepare such non-pork main dishes as hamburgers, meat loaf, chili con carne, and gravies served on non-pork meats. While prison authorities contested this testimony, they admitted that pork was present in macaroni and cheese, hot dogs, cold cuts and luncheon meats. The chief steward also admitted that pork was used to season about half of the green vegetables served and many side dishes. Barnett v. Rodgers, *supra*, 410 F.2d at 998. Nonetheless, the District Court once again

dismissed the suit, apparently on the theory that a balanced diet was provided to prisoners generally and if a particular inmate wished to practice his religion, he could refrain from eating those things he found objectionable. The issue of whether an inadequate diet would result from this exercise of "freedom" was not faced.

The Court of Appeals for the District of Columbia Circuit ruled that the District Court had erred in its dismissal of petitioners' complaints, reasoning that the request for one full-course, pork-free diet daily was "essentially a plea for a modest degree of official deference to their religious obligation." The onus was to be placed upon the state to demonstrate that the impediments placed in the way of appellants' observance of their dietary creed had compelling justification, such as budgetary constraints or administrative difficulties. The District Court was also to inquire into whether governmental purposes responsible for the impediments could be feasibly "pursued by means that [less] broadly stifle fundamental personal liberties." Barnett v. Rodgers, *supra* at 1003.

■■ While the decisions of prison officials are entitled to considerable weight, they are subject to judicial reviews "to insure that the constitutional rights of prisoners are protected." Brown v. Peyton, *supra*, 437 F.2d at 1232. The state's only justification for refusing to provide some form of alternative diet is that adequate nourishment could be obtained from non-pork items. This is a conclusory assertion made in an affidavit by W. H. Swart, the official of the North Carolina Department of Correction responsible for preparing and distributing menus. The plaintiffs have not been given an opportunity to submit their own evidence or controvert the Swart affidavit. Nor is it clear to what extent non-pork meat, vegetables and other side dishes are prepared with pork seasonings and derivatives. As a matter of fact, an analysis of the master menus for the months of March, April, May and June,

1972, which were submitted by the defendants, reveals the following with respect to the number of meals at which some form of pork was served as the exclusive meat:[1]

| Month (1972) | Total Number of Meals Where Meat Served | Number of Pork Meats | Non-Pork Meats | Percent of Meals with Pork Meats |
|---|---|---|---|---|
| March | 89 | 43 | 46 | 48.3% |
| April | 77 | 38 | 39 | 49.3% |
| May | 90 | 43 | 47 | 46.6% |
| June | 92 | 44 | 48 | 47.8% |

Whether a prisoner could obtain adequate nourishment from the prison ration while refraining from eating all pork-tainted food is a question of medical and scientific fact. Adequacy of diet is not simply measured by determining whether the stomach is so full that pangs of hunger do not persist. There are special nutritional elements found in meats; and when the amount of meat in a diet is reduced, substitutes providing parallel nourishment can be found, but only in certain foods. Adequacy of diet must be viewed qualitatively as well as quantitatively. Since almost half of the meals served at the prison contain pork as the exclusive meat, and many others may contain meat, vegetables or eggs seasoned with pork products, the Department of Correction has not *clearly* shown that an adequate ration is available to Muslim prisoners wishing to observe their religious creed, in either a quantitative or qualitative sense.

The appellants also challenge their treatment vis-à-vis ulcer patients, who are provided a menu which specifically provides that "No pork meats are served" and are also permitted to eat items on the regular menu. The State responds that a failure to provide an ulcer diet to an inmate for whom the diet has been prescribed could conceivably give rise to a claim of denial of adequate medical treatment. This is undoubtedly true and certainly justifies treating ulcer patients differently from the general population with respect to diet. It does not, however, explain the refusal to accord the same privileges to the plaintiffs, who also make a constitutional argument in support of their demands. The prison authorities apparently have arbitrarily chosen to acknowledge the medical claim and to resist the religious claim, but have failed to make any showing that their refusal to provide some minimal form of pork-free diet is based on any "paramount state interest." The State admits that at one time it provided a pork-free diet for Black Muslims. This policy was discontinued, not because of any "paramount state interest," but because allegedly the prisoners did not eat the food provided.

Appellants are entitled to an evidentiary hearing on the prevalence of pork in the prison diet, on whether there is adequate nourishment in the pork-free foods currently available to the prisoners and on whether the state can establish an adequate interest for not providing some satisfactory form of alternative diet. Since the District Court erred in its summary dismissal of this case, leave to appeal in forma pauperis is granted, the judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

CRAVEN, J., concurs in the result only.

1. The figures for pork-meat meals do not reflect those meals where pork was served accompanied by a non-pork meat. These are classified as non-pork meals. Composition meats which generally include pork are treated as pork meat in the chart. Breakfast meals are included. It is not known whether eggs are cooked in pork derivatives or with pork meats.