**Richard David COOPER**

v.

**Lt. ROGERS, et al.**

**Civ. No. JFM–89–640.**

United States District Court,
D. Maryland.

Oct. 30, 1991.

256

Dominick M. Valencia, Jr., Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff.

Stephanie Lane–Weber, Office of the Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

Richard David Cooper, an inmate housed at the Maryland Penitentiary, claims that Lt. James Rogers and other state correctional officials have failed to provide him with a kosher breakfast in violation of his constitutional rights. Cooper has brought this action under 42 U.S.C. § 1983 seeking injunctive relief as well as compensatory and punitive damages. Discovery has been completed, and both parties have moved for summary judgment.

### I.

Cooper is a practicing Orthodox Jew. His religious beliefs thus require him to eat only foods prepared in accordance with the Jewish dietary laws. Although certain foods served at the Maryland Penitentiary are kosher, the prison's general menu does not provide an adequate kosher diet. For

the first several years of his prison term, Cooper took meals from the line, apparently because he assumed that kosher meals were not available. Over the last several years, however, Cooper has requested that defendants provide him with kosher meals.

Cooper's efforts have been largely successful. Since 1989 at the latest, the state has provided Cooper with a kosher lunch and dinner daily.[1] These meals are purchased at state expense from caterers who provide kosher meals to nursing homes. Defendants apparently decided to provide the specially prepared meals on the advice of Rabbi Yisroel Reznitsky of the Baltimore Torah Institute, who urged that such meals were "a religious necessity." Defendants refused, however, to order a special breakfast for Cooper on the ground that a sufficient breakfast could be had from the kosher items already offered in the regular breakfast line. Cooper has not eaten from the breakfast line, insisting that it does not offer kosher foods. Instead, Cooper eats instant oatmeal, individually packaged and bearing a stamp of rabbinical certification, which he purchases at his own expense from the commissary and prepares in his cell. Apparently, he often sleeps through breakfast.

Cooper filed this action on or about March 1, 1989. Having demonstrated exhaustion of his administrative remedies, Cooper was permitted to proceed *in forma pauperis* on June 13, 1989. Defendants originally moved for summary judgment on October 25, 1989, but I denied their motion in order to allow time for full discovery.

Since the suit has been filed, officials at the Maryland Penitentiary have taken further steps to provide kosher foods on the regular breakfast line. Maria Maximo, Correctional Regional Dietary Manager, sought out the advice of Rabbi Meyer Kurcfeld, kosher food inspector for Baltimore County. In January of this year, Rabbi Kurcfeld toured the kitchen facilities and made recommendations about kosher

1. The record does not indicate exactly when the state first began providing Cooper with special kosher meals. However, Cooper's affidavit in support of his motion for summary judgment states that he has received a kosher lunch and dinner during the period relevant to this lawsuit. This suit was filed early in 1989.

breakfast foods which could be offered without special preparation.[2] Rabbi Kurcfeld advised penitentiary officials that many breakfast items already available are kosher for most Orthodox Jews. These foods include packaged cereal and fresh fruit. The rabbi also recommended additional foods which could be served. Based on Rabbi Kurcfeld's advice, Maximo proposed several kosher breakfast menus for Cooper. These menus would have included new, hot offerings such as kosher pancakes and french toast.

Defendants actually implemented few of these proposals, however. The current kosher breakfast menu at the penitentiary includes fruit, juice, cereal, milk, and coffee. The only new item is kosher bread, specially ordered for Cooper. Defendants failed to provide Cooper with a catered breakfast and implement fully the proposed menus because both options were too expensive. The current cost of Cooper's diet, including the pre-packaged lunch and dinner, is now three to four times the amount budgeted for the average inmate. The Maryland Penitentiary has already made more extensive dietary provisions for Cooper than is made for practicing Jews in most other state prison systems.[3] Defendants are also concerned about the possibility that granting Cooper's demands will lead to a flood of similar dietary requests. Muslim inmates have already sued defendants claiming the right to ritually slaughtered meats.[4]

Despite the efforts made by defendants, Cooper has continued in his refusal to eat from the prison breakfast line. Although he does not eat a regular breakfast, Cooper remains healthy. According to Cooper's expert, Dr. Abby Glen Ershow, a nutritionist with some experience in kosher food preparation, Cooper's diet is generally adequate with two exceptions: first, the distribution of calories among his three daily meals is unequal;[5] and second, his diet is low in calcium. A regular breakfast would remedy both of these deficiencies.

## II.

The Supreme Court stated the appropriate standard for constitutional review of prison regulations [6] in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987): "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner* supplies the relevant standard for deciding Cooper's free exercise claim.[7] *See O'Lone v. Estate of*

---

2. Defendants have admitted that their kitchen facilities are inadequate for the preparation of kosher food.

3. Of the 33 state prison systems that house Jewish inmates, Maryland is one of only 13 that provide a partial or total kosher diet. Twenty states make no special provisions at all. As of July 1989, Cooper was one of two Jewish inmates at the Maryland Penitentiary receiving specially prepared kosher meals. Apparently, the other inmate has not complained about the lack of a kosher breakfast.

4. *Calhoun-el v. Robinson*, No. K–89–547; *Robinson-bey v. Robinson*, No. K–89–548. A third case, *Salaam v. Collin*, No. K–76–1676, has been reopened and consolidated with the other two, apparently for the purpose of deciding the dietary issue. Defendants moved for summary judgment in these cases on June 5, 1991. That motion has not yet been decided. Several of the affidavits and other exhibits filed by defendants in this case were originally filed with defendants' motion for summary judgment in those cases.

5. Maria Maximo, also a nutritionist, disagrees that equal distribution of calories over three meals on a daily basis is necessary for one's diet to be nutritious.

6. Although a formal prison "regulation" is not at issue here, *Turner* applies generally to the administrative policies, acts and decisions of prison officials. *See Hunafa v. Murphy*, 907 F.2d 46 (7th Cir.1990) (refusal to grant inmate's dietary request analyzed under *Turner* standard).

7. For the purposes of this opinion, I have decided to treat Cooper's claim as arising under the free exercise clause of the first amendment. Common sense suggests that this case is best thought of as a free exercise claim for the simple reason that there would be no dispute if Cooper did not seek to practice his religion. Other constitutional provisions arguably protect Cooper's asserted right, however. Plaintiff relies heavily on *Ross v. Coughlin*, 669 F.Supp. 1235, 1241–42 (S.D.N.Y.1987), in which the court held that prison officials' failure to provide an Orthodox Jewish inmate with *any* kosher food during the first week of his incarcera-

*Shabazz,* 482 U.S. 342, 350–53, 107 S.Ct. 2400, 2405–07, 96 L.Ed.2d 282 (1987) (reasonable relationship existed between work regulations which prevented Muslim inmates from attending Friday afternoon prayers and legitimate concerns for order and safety at prison).

Lower courts have regularly applied *Turner* and *O'Lone* in cases where prisoners assert a constitutional right to a diet consistent with their religious practices. *See Hunafa v. Murphy,* 907 F.2d 46, 48 (7th Cir.1990); *Benjamin v. Coughlin,* 905 F.2d 571, 575, 579–80 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); *Kahey v. Jones,* 836 F.2d 948, 950 (5th Cir.1988); *McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir.1988). Accordingly, Cooper has no right to a specially prepared kosher breakfast as long as defendants' denial of such a breakfast bears a reasonable relationship to their legitimate penological goals.[8]

*Kahey* and *Hunafa,* two recent cases involving Muslim inmates, are instructive on this question. In *Kahey,* plaintiff claimed that her faith not only prevented her from eating pork but also any food cooked or served in or on utensils which had touched pork. She requested that she be served eggs, fruit and vegetables, in their shells or peels, on paper plates. Prison officials responded by providing a protein substitute for pork, prepared beans

without pork, and by identifying any dishes on the prison menu that contained pork. Fulfilling plaintiff's particular request, they contended, would have required individualized processing. *Kahey,* 836 F.2d at 949. The Fifth Circuit found that defendants' response was reasonably related to their interest in running "a simplified prison food service." *Id.* at 950–51. In upholding summary judgment against plaintiff, the court stated that "[defendants'] reluctance to supply an individualized kosher diet for Kahey fully accords with the result and reasoning of *Turner* and *O'Lone.*" *Id.* at 951.

In *Hunafa,* defendants faced a more modest request. Hunafa, a Muslim inmate held in disciplinary segregation, asked only that he be served food on a tray that contained no pork in order that pork not touch, and thus contaminate, the rest of the meal. Hunafa did not ask for a special meal, merely a tray without the pork entree. *Hunafa,* 907 F.2d at 46–47. The Seventh Circuit reversed summary judgment for defendants, concluding that the record was too "skimpy" to support a finding that defendants' refusal to provide a pork-free tray was reasonable. *Id.* at 48. The court distinguished *Kahey* on the ground that Kahey's demands were far more taxing than Hunafa's. *Id.* at 47–48.

■ Both *Kahey* and *Hunafa* demonstrate that Cooper is not entitled to the

---

tion could constitute a denial of due process. However, in that case, unlike here, plaintiff's claim actually involved an issue of due process; plaintiff alleged that he had been arbitrarily deprived of access to the prison's existing kosher food program. *Ross,* 669 F.Supp. at 1242. Alternatively, Cooper's claim might be stated as a denial of equal protection since he only seeks what is provided to inmates with more conventional religious obligations—a religiously acceptable diet. *See Allen v. Toombs,* 827 F.2d 563, 568 (9th Cir.1987) (Native Americans seeking same access to spiritual counselors as afforded Catholic and Protestant inmates).

As a practical matter, the legal inquiry under *Turner* remains the same regardless of the specific constitutional provision invoked, that is, whether the infringement of the alleged right is reasonably related to a legitimate penological interest.

**8.** Plaintiff argues for a different constitutional rule. He contends that "'prison authorities

must accommodate the rights of prisoners to receive diets consistent with their religious scruples.'" *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975); *Prushinowski v. Hambrick,* 570 F.Supp. 863, 866 (E.D.N.C.1983)). Decided before *Turner, Kahane* and *Prushinowski* involved the rights of Jewish inmates to kosher meals. The court in both cases applied a standard of review less deferential to prison officials than the prevailing *Turner* standard. *See Kahane,* 527 F.2d at 495 ("'important or substantial governmental interest'") (quoting *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)); *compare Prushinowski,* 570 F.Supp. at 866 (challenged policy must be least restrictive alternative) *with O'Lone,* 482 U.S. at 350, 107 S.Ct. at 2405 ("least restrictive alternative" test specifically rejected). Thus, despite their factual relevance to this case, *Kahane* and *Prushinowski* can place no greater obli-

kosher breakfast (or access to cooking facilities) he demands. Cooper's dietary standards are at least as exacting as Kahey's. More important than plaintiff's demands, however, is the defendants' response. In *Kahey*, the court held that prison officials had no obligation to implement a special menu, other than the pork substitutes already provided Muslim inmates. *Kahey*, 836 F.2d at 950. In this case, defendants have already made special meal arrangements and taken time to investigate how Cooper's needs might be further accommodated. Although the court in *Hunafa* found that defendants were not entitled to summary judgment, that case is distinguishable. Hunafa's modest request for a pork-free tray stands in contrast to Cooper's claim to a catered kosher menu. Also, the defendants in *Hunafa*, unlike the Maryland officials here, merely denied the inmate's request without attempting to estimate the potential administrative costs.[9]

Cooper argues that he has established genuine dispute as to whether defendants have already provided sufficient kosher food in the regular breakfast line. I am not satisfied that he has done so. Defendants' expert, Rabbi Kurcfeld, has advised defendants that the half-pints of milk, small boxes of cereal, Sanka and fresh, uncut fruit currently available in the breakfast line as individually packaged single servings are "kosher for the typical orthodox adherent, although there are even more stringent levels of kosher observance for which the items may not be acceptable." Cooper's expert, Dr. Abby Glen Ershow, has testified that her "review of the menus ... shows that a large fraction of the items could not be made kosher." Neither she nor Cooper has specified, however, why the supposedly kosher food currently offered failed to meet Cooper's religious needs. Moreover, Dr. Ershow's testimony seems to be based upon the mistaken assumption that the milk being offered was not individually packaged. This is a matter of import since if acceptable milk is available, there is no factual dispute that Cooper's available diet is nutritionally adequate.

In any event, the availability of kosher food is only relevant in determining what alternatives are open to Cooper, only one of the factors to be considered under *Turner*. Of course, if a kosher breakfast is already available, Cooper would have an alternative means of observing his religion and defendants' refusal to provide a pre-packaged meal would clearly be reasonable. But even if the kosher breakfast is not available, Cooper can continue to practice his religion by purchasing from the commissary breakfast foods which meet his kosher standards. While *Turner* and *O'Lone* specify alternative means of observance as an indication of reasonableness, neither opinion states that such an alternative must be state-subsidized. Moreover, the record establishes beyond doubt that defendants have already gone to considerable lengths to provide Cooper with a kosher diet. Even if these efforts are ultimately unsuccessful, they are evidence that defendants have reasonably accommodated Cooper's religious needs in light of practical considerations. *See Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir.1987).[10]

gation on defendants than do *Turner* and *O'Lone*.

9. In support of their motion, defendants in *Hunafa* had submitted only a brief affidavit summarizing their concerns. The court concluded that although *O'Lone* might be read literally to require "only a determination that a rational basis for the regulation can be conjectured," defendants' affidavit was simply insufficient to establish the requisite "reasonable relationship." *Hunafa*, 907 F.2d at 48. Defendants in this case have supplied the court with much more evidence to show that their efforts to accommodate Cooper have been reasonable.

10. Plaintiffs argue that defendants' *"post-facto"* efforts to provide a kosher breakfast menu constitute questionable evidence of the reasonableness of their actions. However, the fact that defendants took these measures after Cooper filed suit has no bearing on whether they are now violating his constitutional rights. While these measures, of course, could not retroactively insulate defendants from liability for damages arising from pre-existing unconstitutional conduct, defendants are clearly entitled to qualified immunity against any such liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). The most favorable reading of the existing judicial precedents from Cooper's perspective is that the state of the law is uncertain and, in light of that fact, it cannot be said that the exact contours of Cooper's alleged right to a pre-packaged

In the final analysis, the question comes down to one of cost. The two kosher meals which Cooper currently receives costs the state approximately $7.50 each day. The average amount budgeted for and inmates daily food allowance is much less, approximately $1.79. A specially ordered breakfast for Cooper would cost between $2.50 and $5.00, compared with approximately $.50 if Cooper ate the allegedly kosher items already available at breakfast. Additionally, a pre-packaged kosher breakfast unlike lunch and dinner, can only be ordered from a caterer in New York. These costs cannot be dismissed as *de minimis,* particularly in light of the impact which providing Cooper with special treatment might have upon the state's duty to provide similar treatment for inmates of other religions. *See Turner,* 482 U.S. at 90, 107 S.Ct. at 2262; *O'Lone,* 482 U.S. at 353, 107 S.Ct. at 2406–07. Defendants' budget concerns thus fully justify the denial of Cooper's request. *See Benjamin v. Coughlin,* 905 F.2d 571, 580 (2d Cir.1990); *Kahey,* 836 F.2d at 950; *Martinelli v. Dugger,* 817 F.2d 1499, 1507 (11th Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988).

A separate order is being entered herewith effecting the rulings made in this memorandum.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 30th day of October 1991

ORDERED

1. Plaintiff's motion for summary judgment is denied;

2. Defendants' motion for summary judgment is granted; and

3. Judgment is entered in favor of defendants against plaintiff.

---

kosher breakfast were so clear in 1989 that a reasonable prison administrator would have understood that failure to provide such a breakfast was a constitutional violation.