Douglas D. THOMPSON, Plaintiff,

v.

Thomas VILSACK, Jessie Rasmussen, James Gardner, Robert Pearce, Mark Swore, Brian Jefferies, and the State of Iowa, Defendants.

No. 4:03–CV–90121.

United States District Court, S.D. Iowa, Central Division.

Aug. 5, 2004.

Patrick E. Ingram, Esq., Iowa City, IA, for Plaintiff.

Gordon E. Allen, Esq., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff Douglas D. Thompson filed the present action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, seeking to be provided with kosher meals for the duration of his civil commitment in the custody of the Iowa Department of Human Services ("DHS"). Plaintiff Thompson has been civilly committed to the DHS Civil Commitment Unit for Sexual Offenders ("CCUSO") under Chapter 229A of the Iowa Code. Plaintiff is Jewish, and one of the requirements of his faith is to keep a strict kosher diet in order to "avoid tainting both his body and soul." Plaintiff claims, and Defendants do not dispute, that keeping kosher is a "fundamental tenet" of the Orthodox Jewish faith. The State of Iowa and numerous

supervisory officials ("the State"), who are named as Defendants in this action, initially resisted Plaintiff's request for kosher meals, leading to the initiation of this action.

On August 6, 2003, the State filed a Motion for Summary Judgment. Prior to a ruling by the Court on the summary judgment motion, the parties reached a settlement in which DHS agreed to provide kosher meals to Plaintiff. Only one issue, whether Plaintiff will be required to make a co-payment for the kosher meals, remains. The State contends that Plaintiff should be required to pay, from the earnings he makes while working during his commitment, a portion of the cost incurred by the State in providing him with kosher meals. Plaintiff, on the other hand, argues that a co-payment requirement for kosher meals is unconstitutional. The Court held a telephone conference on July 21, 2004, during which both parties agreed that no material facts are disputed.[1] The question for the Court, then, is whether the State may constitutionally require Plaintiff to remit a co-payment in order to receive kosher meals.

For the reasons detailed below, the Court holds that forcing Plaintiff to remit payment for his kosher meals is unconstitutional. Therefore, Plaintiff's cross-motion for summary judgment is granted.

## I.  SUMMARY JUDGMENT

### A.  The Legal Standard

Summary judgment "is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Board of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the non-moving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994).

In ruling on a summary judgment motion, the Court does not weigh the evidence nor make credibility determinations;

---

1. The Court, with the consent of the parties, therefore treats Plaintiff's resistance to Defendants' Motion for Summary Judgment as a cross-motion for summary judgment.

the Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) (stating that "summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. The "mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## B. Plaintiff's § 1983 Claim

The Supreme Court has recognized that prisoners do not forfeit their constitutional rights while they are incarcerated, or, as is the case here, civilly committed. Those in the custody of the state "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (quoting *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). As Justice Brennan eloquently stated:

> Prisoners are persons whom most of us would rather not think about.... [T]hey exist in a shadow world that only dimly enters our awareness. It is thus easy to think of prisoners as members of a separate netherworld.... Nothing can change the fact, however, that the society that these prisoners inhabit is our own. When prisoners emerge from the shadows to press a constitutional claim, they invoke no alien set of principles drawn from a distant culture. Rather, they speak the language of the charter upon which all of us rely to hold official power accountable. They ask us to acknowledge that power exercised in the shadows must be restrained at least as diligently as power that acts in the sunlight.

*O'Lone,* 482 U.S. at 354–55, 107 S.Ct. 2400 (Brennan, J., dissenting).

There are occasions, however, when constitutional rights may be abridged because of incarceration or to further valid penological interests. *Id.* at 348, 107 S.Ct. 2400. The Supreme Court recognized in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), that courts are not the proper place to deal with every problem arising within a prison's walls and, therefore, that courts shall afford a substantial degree of deference to prison officials in promulgating rules and regulations. *Id.* at 84–85, 107 S.Ct. 2254. If a regulation or restriction imposed by

prison officials infringes on the constitutional rights of one who is in the custody of the state, it is valid "if it is reasonably related to legitimate penological interests." *Love v. Reed*, 216 F.3d 682, 690 (8th Cir. 2000) (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. 2254). Courts are to examine the following factors when determining if a regulation is reasonable:

> 1) whether there is a valid, rational connection between the regulation and the interest asserted; 2) whether alternative means of exercising the right remain open to the prisoner; 3) the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources; and 4) whether there is some alternative which will accommodate the prisoner's needs with *de minimis* impact on the prison's asserted interests.

*Id.* (citing *Turner*, 482 U.S. at 89–91, 107 S.Ct. 2254).

The first step in scrutinizing a regulation or policy that affects the constitutional rights of those in the custody of the state is to determine whether there is a rational connection between the regulation and the state interest or interests asserted. *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. The State need only demonstrate that the co-payment requirement is rationally related to a legitimate penological interest. *See Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir.2004) (holding that Defendants' decision to deny Plaintiff's request that his white supremacist group be able to meet together was rationally related to Defendants' valid interest in maintaining security in the institution).

■ The State asserts three penological interests for its requirement of a co-payment for kosher meals. First, the State cites an interest in "rehabilitation of the patient by teaching financial responsibility." Defendants claim that those in state custody are taught to share the cost of such things as food and housing, and they argue that if Plaintiff were living outside of the custody of the state he would be required to pay for all kosher meals. Second, the State cites an interest in maintaining a fixed budget for food at prison facilities. Since the State has an interest in fiscal responsibility, Defendants argue it would be unreasonable to provide special meals for a limited number of inmates. Finally, the State claims an interest in the effect of the practice on other inmates. A co-payment, Defendants claim, will reduce tension between those receiving kosher meals and those who do not.

■ The Court concludes the latter two interests have at least a valid, rational connection with the co-payment requirement, satisfying the first factor in the *Turner* analysis. The Court concludes that prison officials have a legitimate penological interest both in working within the parameters of a fixed budget and in reducing tension between those who receive kosher meals and those who do not. The first interest cited by the State, however, fails to satisfy the first *Turner* factor. Defendants claim that teaching patients financial responsibility is a valid penological interest, and this goal will be furthered by requiring a co-payment for kosher meals because "if [Thompson] were on the streets, he would be required to pay" the entire cost of the kosher meals required by his religion. The State's argument overlooks the fact that *all* of those individuals in the custody of the state would be required to pay the entire cost of their meals if they were living freely out of the State's custody, yet Defendants seek to require Thompson to share the cost of his meals only because he is requesting a meal that is not routinely provided. Defendants' argument as to this claimed interest is inherently flawed and punishes Thompson solely on the basis of his faith, a premise that

is wholly repugnant to the free exercise of religion guaranteed by the First Amendment.

Next, the Court must consider the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources. *Turner,* 482 U.S. at 90, 107 S.Ct. 2254. Very few changes in a correctional institution will "have no ramifications on the liberty of others or on the use of the prison's limited resources." *Id.* In *Beerheide v. Suthers,* a case in which the Tenth Circuit considered the issue of the constitutionality of requiring inmates to pay for kosher meals, the panel noted that, although *Turner* requires that courts shall give deference to prison officials, that deference is not absolute and requires some presentation of specific and reliable evidence. 286 F.3d 1179, 1189 (10th Cir. 2002). The State, therefore, must come forward with credible and specific evidence of the effect that a co-payment requirement for kosher meals will have on its asserted interests.

Defendants have not come forward with such evidence. In claiming a budgetary interest, the State does not provide figures, calculations, or numbers of any sort to demonstrate the impact that providing Thompson with kosher meals would have on the State's budget. Prior to the settlement reached by the parties, the State had provided some figures to the Court on this issue, but expressly stated in its brief on the issue of a co-payment that "the costs, both actual and projected, contained in the [prior] Statement of the Defendants [are] no longer accurate." It is quite difficult for the Court to evaluate the impact of providing kosher meals on the budget of the State when there are no figures or calculations to evaluate and analyze. At most, the Court finds that the impact, if any, on the budget of the Defendants is *de minimis. See Beerheide,* 286 F.3d at 1189–90 (holding that where evidence of the claimed cost of a measure to the state is "elusive," the conclusion can be drawn that the budgetary impact is *de minimis* ). Moreover, even if the State had presented credible and specific information regarding the claimed adverse impact on their budget, budgetary constraints or inadequate resources alone are not a valid reason for Defendants to deprive Thompson of a constitutional right. *See Rhem v. Malcolm,* 507 F.2d 333, 341 n. 20 (2d Cir.1974), questioned on other grounds in *Jordan v. Wolke,* 615 F.2d 749 (7th Cir.1980); *Prushinowski v. Hambrick,* 570 F.Supp. 863, 868–69 (E.D.N.C.1983), questioned on other grounds in *Cooper v. Rogers,* 788 F.Supp. 255 (D.Md.1991); *Hamilton v. Love,* 328 F.Supp. 1182, 1194 (E.D.Ark. 1971).

The same problem plagues the State's claim that a co-payment requirement "has the effect of reducing tension between kosher receivers and non-receivers." The State has presented no evidence whatsoever to support the claim. As stated above, there is hardly a prison regulation that will not have at least *some* effect on others, so it is the State's burden to produce credible and specific evidence to support this asserted interest. Defendants must present specific evidence that a co-payment will significantly ease any tension that might arise from providing kosher meals to Thompson, as opposed to simply asserting that a reduction in tension will result. In other words, Defendants cannot merely point to a hypothetical impact on prisoner relations and expect to satisfy the test in *Turner. Beerheide,* 286 F.3d at 1190. The State has failed to demonstrate either that requiring a co-payment will reduce tension between kosher receivers and non-receivers or that having no co-payment will increase tension among the same groups.

The second *Turner* factor involves examining alternative means for Plaintiff to exercise the right asserted. In this case, because Plaintiff and Defendants have agreed that Plaintiff will receive kosher meals, the examination of alternatives to kosher meals becomes moot. Similarly, *Turner's* fourth factor involves an examination by the Court of "ready alternatives that would fully accommodate the plaintiffs' rights at *de minimis* costs to valid penological interests of the [defendants]." *Beerheide*, 286 F.3d at 1191. The State has already agreed that Plaintiff will be provided with kosher meals, thus the issue becomes whether the cost of providing the kosher meals carries more than a *de minimis* cost to Defendants' valid penological interests. As previously discussed, the State failed to come forward with credible and specific evidence of the effect that the cost of providing kosher meals would have on their interest in maintaining fixed food costs for state institutions.

The Court concludes that, based upon its analysis of the factors articulated by the Supreme Court in *Turner*, the co-payment requirement proposed by Defendants is not reasonably related to any legitimate penological interests. Consequently, the imposition of the co-payment requirement is an invalid infringement on Plaintiff's constitutional right to free exercise of religion.

## C. Plaintiff's RLUIPA Claim

■ Plaintiff additionally raises a claim under RLUIPA. This "statutory free exercise claim encompass[es] a higher standard of review than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d 979, 986. Under RLUIPA, the government must demonstrate that the imposition of a burden on religious exercise is both in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling government interest. *Id.* at 986. Ac-

cordingly, having already found that the proposed co-payment for kosher meals is not reasonably related to legitimate penological concerns, it is clear that Plaintiff would prevail under a RLUIPA analysis as well, which requires a much more substantial showing by Defendants.

## II. ORDER

For the reasons stated herein, Plaintiff's cross-motion for summary judgment is granted.

IT IS SO ORDERED.