**Ed UDEY, Petitioner-Appellant,**

v.

**B.C. KASTNER, Warden, et al.,
Respondents-Appellees.**

No. 85–2791.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1986.

Rehearing Denied Jan. 15, 1987.

R. David Freeze (court-appointed), Texarkana, Ark., for petitioner-appellant.

Ed Udey, pro se.

Christopher Erlewine, Dallas, Tex., Bob Wortham, U.S. Atty., Dane Smith, Asst. U.S. Atty., Tyler, Tex., Martin C. Carlson, Victor D. Stone, Washington, D.C., for respondents-appellees.

Before GOLDBERG, WILLIAMS and DAVIS, Circuit Judges.

PER CURIAM:

Petitioner Edwin Udey filed suit in the United States District Court for the Eastern District of Texas under the First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Udey, a prisoner in the Federal Correctional Institution in Texarkana, asked to be provided with a diet consistent with his sincerely held religious beliefs; he primarily requested organically grown produce washed in distilled water. The federal prison officials declined, Udey refused to eat the nutritionally adequate food provided, and Udey has since been force-fed through nasal tubes. The district court found that Udey's religious beliefs were not sincerely held. We reversed and remanded for an evidentiary hearing to determine whether meeting Udey's religious and dietary requirements would place an undue burden on the prison system and whether there was any good reason not to provide him with food that complies with his religious diet (order of July 9, 1986).[1] Judge Hall held the appropriate hearings and found that the prison system was not required to cater to Udey's requests, 644 F.Supp. 1441 (1986). We affirm.

Judge Hall found on four independent grounds that an undue burden would be imposed on the prison system and that good reason existed not to provide Udey with his requests. In particular, Judge Hall found: that it would cost approximately $5.00 per day to meet Udey's requirements, with total accommodation costs in excess of $15,000.00 per year; that hostility from other inmates, theft or "pilferage" of specialty foods, and the potential creation of a black market in such items might result, causing security problems; that administrative costs of providing Udey's requirements would include problems of determination, procurement, preparation, health standards, and storage, requiring three or more hours of additional staff time; and that "the potentially disruptive effect on prison order and discipline [from the probable proliferation of claims for specific individual religious dietary require-

---

1. We note that there is an intercircuit conflict on the appropriate standard for free exercise claims in a prison context. *See, e.g., Barnett v. Rodgers,* 410 F.2d 995, 1000 (D.C.Cir.1969) (compelling state interest and no alternatives that would not infringe upon First Amendment rights); *Shabazz v. O'Lone,* 782 F.2d 416, 420 (3d Cir.1986) (en banc), *petition for cert. filed,* 54 U.S.L.W. 3730 (U.S. Apr. 16, 1986) (No. 85–1722) (important penalogical goals served and no reasonable method by which religious rights can be accommodated). We pray the Supreme Court in *Shabazz v. O'Lone* will bring order to this unholy mess.

ments] is perhaps the most compelling governmental interest articulated...." Second Supplemental Record, Corrected Opinion, at 15.

We are somewhat concerned over the government's argument that the provision to one person of simple dietary requirements poses security concerns, which thereby require a "mutual accommodation" standard with "wide-ranging deference" to prison authorities. *See Bell v. Wolfish,* 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *see also Thorne v. Jones,* 765 F.2d 1270, 1275 (5th Cir.1985) (security decisions of prison officials are to be reviewed only for reasonableness). We are reluctant to believe that the failure to provide adequate security from pilferage can be used by the Government to avoid what otherwise might be constitutionally required under the First Amendment. Similarly, although we recognize that costs are a valid consideration for First Amendment purposes, *see Walker v. Blackwell,* 411 F.2d 23, 26 (5th Cir.1969), we have stated in other prison suits that " 'inadequate resources can never be an adequate justification for depriving any person of his constitutional rights.' " *Smith v. Sullivan,* 553 F.2d 373, 378 (1977) (quoting *Hamilton v. Love,* 328 F.Supp. 1182, 1194 (E.D.Ark. 1971)). We therefore are hesitant to adopt the district court's conclusions of law that the alleged cost, security, and administrative difficulties that might result from providing *one* person with his dietary needs constitute a good reason or an undue burden.[2] Thus, we choose not to review the trial judge's determinations except as regards the potential for proliferation of false claims and the burdens potentially imposed by *many* individuals on the prison system.

As stated in *Brown v. Dade Christian Schools, Inc.,* 556 F.2d 310, 323 (5th Cir. 1977) (en banc) (Goldberg, J., specially concurring):

[A]mong the most important factors in this respect are the institutional consequences of the alternative decision. When a court can recognize a free exercise claim without inviting numerous additional claims, focusing on the particular consequences of the ruling in the case at bar is appropriate. But when recognizing the claim will predictably give rise to further claims, many of which will undoubtedly be fraudulent or exaggerated, the situation is different. In that event, the court must either recognize many such claims (so that the relevant governmental interest extends beyond the individual claimants in the original action) or draw fine and searching distinctions among various free exercise claimants. The latter course would raise serious constitutional questions with respect to the proper functioning of courts in sensitive religion clause adjudication.... When numerous claims are likely, recognizing some while rejecting others unavoidably forces courts to pick and choose among religions and to draw subtle distinctions on the basis of criteria with which no governmental unit should ever be entangled.

The trial judge cited testimony stating that the potential for proliferation was a "very strong likelihood" and that the number of religious dietary requests has "grown by leaps and bounds." Supplemental Record,

---

**2.** This is particularly true in the present context, where prison officials have already seen fit to provide an experimental "common fare" *religious* dietary alternative to the standard food provided. Judge Hall found that the per person cost per day of the common fare program was $5.00, *identical* to the cost of providing Petitioner Udey's requirements. Second Supplemental Record, Corrected Opinion, at 5.

The Government maintains that this alternative is not *required* by the First Amendment. Government's Proposed Findings of Fact and Conclusions of Law, Supplemental Record, Vol.

1, at 52 n. 1. Further, the Government recognized that the common fare program "did not satisfy the individual dietary demands of every inmate...." *Id.* at 37. Although we have every desire to encourage the Government to provide religious dietary alternatives, providing alternatives acceptable to practitioners of "majority" religions while failing to provide alternatives acceptable to practitioners of less common, even unique, religions poses serious Equal Protection/First Amendment Establishment concerns. *See Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

Vol. 1, at 73–74. The trial judge specifically found that the proliferation effect would place an undue burden on the prison system. *Id.* at 74.

We believe that the probable proliferation of claims, and the concomitant entanglement with religion that processing *multiple* claims would require, does constitute a problem that the state has a good reason to avoid. Such proliferation, and the concomitant need to meet *multiple* distinct dietary requirements, might create undue cost and administrative burdens. We thus AFFIRM the trial court's decision on this ground only.