Sherral X. KAHEY, Plaintiff–Appellant,

v.

Johnnie JONES, Warden, Louisiana Correctional Institute for Women, et al., Defendants–Appellees.

No. 87–3458
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1988.

Sherral X. Kahey, pro se.

Debra A. Rutledge, J. Marvin Montgomery, Atty. Gen., Baton Rouge, La., for defendants-appellees.

Before GEE, RUBIN, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Kahey, an inmate at the Louisiana Correctional Institute for Women ("LCIW"), appeals from the magistrate's grant of summary judgment denying her demand to have the prison prepare, not just a non-pork diet, but a specially-tailored menu in a special way to accommodate her practice of Islam. We affirm.

■ The State of Louisiana contends that this case may be disposed of on eleventh amendment grounds, inasmuch as Kahey's original complaint sought $350,000 from the Appellants in their official capacities as Warden and Food Service Supervisor of the LCIW. In the ordinary case, we would agree that this lawsuit for retrospective damages, even though couched as one against the individual employees of the state, would as a practical matter result in a judgment payable from the state treasury. The eleventh amendment, however, bars such a suit against a state official when "the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). *See also Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183 (5th Cir.1986). With regard to this pro se plaintiff, a more generous construction of her pleadings is necessary, and so read, they repeatedly and ardently seek affirmative recognition by the prison authorities of the restrictions of her kosher diet. To the extent her complaint thus seeks prospective injunctive relief against the state, it does not contravene the eleventh amendment, *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), and we proceed to the merits.

■ Kahey averred that the Moslem religion prevents her not only from eating products containing pork, but from eating any food cooked or served in or on utensils that have come into contact with pork or any pork by-product. She requests the prison to provide her with regular meals consisting of eggs, fruit and vegetables served with shells or peels, on paper plates. The prison officials responded that in their attempts to satisfy Kahey, they modified the applicable prison regulation, No. 30–22, to provide a protein substitute whenever pork is served with a prison meal. They also identified on the prison menus any pork or shellfish products in the dishes served and, when appropriate, they prepare some dishes, like beans, both with and without pork. Fulfilling Kahey's particular requests would require special food and

individualized processing and containers in order to completely avoid pork-contamination.

The short answer to Kahey's request is that our circuit, in *Udey v. Kastner*, 805 F.2d 1218 (5th Cir.1986), has already ruled that prisons need not respond to particularized religious dietary requests. The principal basis for decision in *Udey* was the court's recognition that if one such dietary request is granted, similar demands will proliferate, with two possible results: either accommodation of such demands will place an undue burden on the prison system, or the prisons would become entangled with religion while drawing fine and searching distinctions among various free exercise claimants.[1] *Udey* controls our decision. *See also Martinelli v. Dugger*, 817 F.2d 1499, 1506–07 (11th Cir.1987) (prison kosher diet regulation upheld).

Since *Udey* was decided, the Supreme Court has twice spoken on the basis for recognizing prisoners' constitutional rights consistent with the needs of the penological setting in which they live. In *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), the Court declared the general test: when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. The standard is intended to encourage deference to prison administrators and to avoid repetitive interference by federal courts in operational matters. —— U.S. at ——, 107 S.Ct. at 2262. *See also O'Lone v. Estate of Shabazz*, —— U.S. ——, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). *Turner* identified four factors that courts should use to gauge the reasonableness of a restraint regulating a prisoner's exercise of constitutional rights. Shortly thereafter, in *O'Lone v. Estate of Shabazz*, —— U.S. ——, 107 S.Ct. 2400 (1987), the Court applied these factors to uphold a prison work

regulation that prevented Islamic prisoners from attending Friday prayer services.

To determine whether LCIW's regular and kosher diet regulations are sufficient under *Turner*, we must consider "(1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it, (2) whether there are alternative means of exercising the rights that remain open to the inmates, (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources, and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests. *Turner*, 107 S.Ct. at 2262; *O'Lone*, 107 S.Ct. at 2405." *McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir.1987).

Applying the *Turner* factors, as elaborated in *O'Lone*, LWIC's policy for accommodating kosher diets passes muster. First, there is a logical connection between the prison regulation and the legitimate governmental interest that justifies it. *Turner*, at 2262. LWIC intends to provide the inmates balanced, uniform meals, with protein substitutes for pork and pork products, reserving special diets only for medical reasons. LWIC has a legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant. Second, we must determine whether there are alternative means for Kahey to maintain her religious practices. In *O'Lone*, it was deemed significant that although the prisoners could not attend a Friday evening Islamic service regularly, they were not prevented from otherwise participating in Islamic rites, including keeping a kosher diet. Although we would not denigrate the significance Kahey attaches to following a special diet prepared in a special manner, she acknowledges in her pleadings that other Moslems do not necessarily adhere to the same standard.

---

1. The second alternative could result in troubling discrimination against prisoners practicing uncommon religions, as majority religions are accommodated. *See Udey* at 1220 n. 2. However, the Supreme Court held in *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31

L.Ed.2d 263 (1972), that although adherents of minority religions must be afforded a reasonable opportunity to worship while in prison, they need not receive facilities or personnel identical with the more populous denominations. *Id.* at 322 n. 2, 92 S.Ct. at 1081 n. 2.

Moreover, she does not complain of being deprived of free exercise rights in any other fashion. We must therefore assume that her practice of Islam is not entirely circumscribed in the prison, and that this factor, as the court found in *O'Lone*, compensates for the prison's failure to satisfy her dietary demand.

Third, we must consider the impact of providing Kahey an individualized diet on "guards and other inmates, and on the allocation of prison resources generally." *Turner, id.* LWIC is understandably reluctant not only to provide special food, but to devote special storage facilities, utensils and preparation effort to supplying Kahey's diet. And, as *Udey* suggests, the prison could be expected to encounter many similar requests if Kahey's is granted. The expense and diversion of resources from other penological goals could be considerable. Moreover, if other prisoners are not similarly accommodated, they might well perceive Kahey as being favored. This perception would have an adverse impact on prison morale. *Compare O'Lone, supra* at 2406. The final factor, according to *Turner*, is whether there are ready alternatives to satisfy Kahey's dietary requirements at *de minimis* cost to valid penological interests. It would seem obvious that purchasing, storing and preparing food for one prisoner out of hundreds in the LWIC would impose more than *de minimis* cost on the prison. The only alternative suggested by Kahey, providing food in hulls or shells served on paper plates, nevertheless requires the prison to set aside resources uniquely for her benefit. In comparison to the cost of the pork-free diet already made available to Kahey through the general prison food service, we cannot conclude that the cost of her preferred kosher diet would be *de minimis.*

We believe the LWIC's reluctance to supply an individualized kosher diet and preparation for Kahey fully accords with the result and reasoning of *Turner* and *O'Lone. See also McCabe v. Arave*, 827 F.2d 634 (9th Cir.1987); *Allen v. Toombs*, 827 F.2d 563 (9th Cir.1987) (both cases substantially upholding prison regulations limiting certain religious activities). As

*O'Lone* concludes, "We take this opportunity to reaffirm our refusal, even where claims are made under the first amendment, to 'substitute our judgment on ... difficult and sensitive matters of institutional administration,' *Block v. Rutherford*, 468 U.S. 576, 588, 104 S.Ct. 3227, 3233, 82 L.Ed.2d 438 (1984), for the determinations of those charged with the formidable task of running a prison." 107 S.Ct. at 2407. Consequently, the summary judgment awarded by the district court must be AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, specially concurring:

Ms. Kahey's convictions appear to me to be sincere and her requests might readily be accommodated. The steps taken by prison authorities—identifying dishes that contain pork on posted menus and offering sliced cheese at meals when the main dish contains pork—may have been intended as accommodations, but they are apparently all but irrelevant to the tenets of Ms. Kahey's religion, which prohibits not merely the consumption of pork, but the consumption of any foods prepared with or served in dishes used in cooking or serving pork. Given the modest dimensions of Ms. Kahey's proposed meal plan, I see no real danger that the administration of the St. Gabriel Prison would be seriously embarrassed if the cooks boiled or baked her potatoes in the skin and served her two eggs and a half pint of milk daily. She has suggested a practicable alternative that would not require prison officials to set up a separate kitchen system. Nonetheless she is in prison and we defer to the decisions of the prison authorities in such administrative matters. The free exercise clause does not entitle this court to substitute its judgment for theirs. Therefore, I concur.