**Al–Amin HUNAFA, Plaintiff–Appellant,**

v.

**James P. MURPHY, John Bell, Raymond Poff, and Evelyn Fox, Defendants–Appellees.**

No. 88–3180.

United States Court of Appeals, Seventh Circuit.

Submitted June 13, 1990.

Decided July 10, 1990.

Al–Almin Hunafa, Waupun, Wis., pro se.

John J. Glinski, Asst Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

Al–Amin Hunafa, an inmate in a Wisconsin state prison, brought this suit under 42 U.S.C. § 1983 against officers of the prison who, he claims, infringed his First Amendment right (made applicable to the states by the Fourteenth Amendment) to the free exercise of his religion, which is Islam. The district court granted the defendants' motion for summary judgment and dismissed the suit.

The prison serves pork two or three days a week to inmates who are in disciplinary

segregation, like Hunafa. Eating pork is contrary to the tenets of Islam (as of orthodox Judaism). The prison does not serve special meals to Muslim inmates who are in segregation, however; instead, whenever it serves pork, it serves along with it a non-pork substitute of soup and bread. The meals are served in the prisoners' cells on plastic trays that are divided into compartments, with pork and potatoes in one compartment and the soup and the bread in two of the other compartments. The defendants candidly admit, however (and we commend them for their candor), that "while the trays are in transit, there is no guarantee that some of these food items may not run together. We do take precautions so that it does not happen, but it could happen." Fearing the contamination of the non-pork products by the pork products, Hunafa refuses to eat any of the meals at which pork is served. He claims that he is being put to an improper choice between adequate nutrition and observance of the tenets of his faith, a claim that has been recognized in a number of cases, such as *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987) (per curiam); *Moorish Science Temple v. Smith*, 693 F.2d 987, 990 (2d Cir.1982); *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir.1975), and *Barnett v. Rodgers*, 410 F.2d 995, 1002–03 (D.C.Cir. 1969). The defendants have not attempted to make an issue of the sincerity of Hunafa's religiously founded aversion to pork, and the district judge assumed for purposes of deciding the motion for summary judgment "that plaintiff's allegation that the whole tray of food is contaminated [when pork is an item on the tray] is true." We take this to mean that the sincerity of Hunafa's religiously founded aversion to food that may have touched pork is not an issue either. Nevertheless the judge concluded that "this diet does not violate plaintiff's First Amendment rights."

As we explained in *Reed v. Faulkner*, 842 F.2d 960 (7th Cir.1988), a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison. But, conversely, a prison is entitled to enforce its regulations, even if they crimp a prisoner's religious style, if the regulations are "reasonably related to legitimate penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987). The defendants point to three respects in which honoring Hunafa's request to be served food on a tray that does not contain any pork might interfere with legitimate penological objectives. First is the inconvenience of requiring the kitchen workers to make up separate trays with no pork on them. This seems a trivial concern, as there are only sixty prisoners in segregation and only eleven of them want a pork-free diet. Second the defendants argue that if Hunafa gets special treatment hostility to Muslims will ripple throughout the prison. This is implausible, though not impossible. Although Muslims who are not in segregation do not have to put up with pork on their tray, they are not getting special meals. They are served cafeteria-style and simply don't ask for the pork, so it doesn't get put on their trays.

Third and most plausible, though still speculative, the prison claims to be concerned with the danger that if the kitchen workers, who are themselves prisoners, know which trays are going to the Muslim inmates of the segregation unit, the workers, or at least the Muslims among them, will try to smuggle contraband to those inmates. We cannot say that this danger is negligible, given the well-known dangers that are posed by inmates in segregation—the most incorrigible inmates. But neither can we say that the danger is plainly so great, or has been so well substantiated in the evidence submitted by the defendants, as to entitle them to summary judgment. *DeMallory v. Cullen*, 855 F.2d 442, 448 (7th Cir.1988).

It is true that the Fifth Circuit recently upheld summary judgment for the defendants in a case brought by a Muslim prisoner who had been refused a special diet. *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988). But her demands were far more taxing than Hunafa's appear to be: she wanted "regular meals consisting of eggs, fruits and vegetables served with shells or peels, on paper plates," *id.* at 949, and the

defendants advanced detailed objections based on cost and feasibility. On the skimpy record before him, the district judge in this case could not and did not attempt to estimate the magnitude of the concerns advanced by the prison officials, but merely offered the conclusion that "the practice of serving all trays with pork and pork substitutes furthers the legitimate penological interests of security and the efficient administration of the institution." Maybe so—indeed this much must be taken to be established, since Hunafa submitted no evidence in opposition to the defendants' affidavit on which the district judge relied in making this finding. Fed.R.Civ.P. 56(e). But the benefit of the practice to the prison must be weighed against the cost to the inmate of having to give up several meals a week in order to avoid defilement considerably more palpable than what prisoner Kahey sought to avoid. She wanted to be sure she did not eat any food that had been cooked or served in or on utensils that had ever come into contact with pork, and this would have required "special food and individualized processing and containers," *id.* at 949–50, which the court thought too much. The prison concerns here are different and for all we know greater, but they have not been elaborated and the prisoner's claim of contamination is stronger. On this record, which consists essentially of a brief affidavit filed by the prison's food administrator that summarizes the prison's concerns but makes no attempt to estimate their magnitude in relation to the plaintiff's religious claims, the balance is too close for summary judgment to be proper.

In so concluding we necessarily are assuming that the question whether a challenged regulation strikes a proper balance between the prisoner's right to practice his religion and the needs of the penal system is one of fact. Read literally, the articulation of the standard that we quoted from *O'Lone* could be thought to make the question one of law, requiring (to uphold the regulation) only a determination that a rational basis for the regulation can be conjectured. But a literal reading would probably be inaccurate. The Court's opinion is studded with references to the transcript of an evidentiary hearing before the judge at which the prison officials testified to the grounds of the challenged regulation. There has been no testimony here.

The defendants have not cited to us the Supreme Court's recent decision in *Employment Division v. Smith*, —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), rendered after the appeal in this case was filed. *Smith* cut back, possibly to minute dimensions, the doctrine that requires government to accommodate, at some cost, minority religious preferences: the doctrine on which all the prison religion cases are founded. No one suggests that the defendants are serving pork in order to offend Jews and Muslims; they serve it because it is cheap and nutritious; their practice may therefore be the equivalent of a general, secular regulation that just happens to interfere with the free exercise of religion by a minority group whose religious preferences are ignored in the shaping of general regulations. *Employment Division v. Smith* may give the defendants a good defense; that is an issue to be explored on remand. For this and other reasons (the defendants may decide to file more complete affidavits or other evidence), we do not rule out the possibility that the defendants may prevail on a subsequent motion for summary judgment, based on a fuller factual record or new legal arguments.

■ The defendants argue in the alternative that they are entitled to immunity from damages liability. Since Hunafa is seeking an injunction as well as damages, a finding that the defendants were immune would not entitle them to be dismissed from the suit. In these circumstances, while the issue of immunity is not premature and we still have power to decide it, *Scott v. Lacy*, 811 F.2d 1153 (7th Cir.1987) (per curiam), there is not the usual urgency in deciding the issue at the earlier possible opportunity. As a practical matter it is the time consumed in litigation rather than the judgment, if any, issued at the end that makes suits against public officers a burden warranting immunity. Since the plaintiff has a substantial equitable claim—Hu-

nafa plainly wants the pork policy enjoined, so that he can eat his full complement of meals—the burden will remain even if the officers are given immunity from any liability to pay damages. In the present case at least it is better to wait and allow a more complete record to be compiled before attempting to decide whether the defendants can be held liable in damages. The principle that the determination of immunity need not be made at the earliest opportunity if a fuller development of the record would be helpful to a sound decision is well established, *Harlow v. Fitzgerald*, 457 U.S. 800, 819–20, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Bass v. Attardi*, 868 F.2d 45, 51–52 (3d Cir.1989) (per curiam); *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir.1988); *Poe v. Haydon*, 853 F.2d 418, 426–27 (6th Cir.1988), and authorizes the course that we have settled on in this case.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.