Harlan **RICHARDS**, Plaintiff–Appellant,

v.

**Sergeant J.D. WHITE, et al.,**
**Defendants–Appellees.**

**No. 90–1261.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1991.

Decided March 11, 1992.

---

Thomas L. Shriner, Jr. and Susan A. LaBudde (argued), Foley & Lardner, Milwaukee, Wis., for plaintiff-appellant.

John J. Glinski, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Plaintiff Harlan Richards, an inmate in the Waupun Correctional Institution in Wisconsin, appeals from the district court's decision to grant summary judgment for defendants in this Section 1983 action. Richards' first amended complaint alleged that in June 1987 he was placed in a double-occupancy cell and three days later an allegedly dangerous homosexual prisoner, possibly with AIDS, was moved into plaintiff's cell. He claimed that his cellmate placed him in danger of sexual assault, AIDS and possible death, presumably in violation of the Eighth Amendment. Richards also claimed that the double-celling prevented him from meditating, praying and exercising in accordance with his The-

lemite religion and therefore violated the First Amendment.[1] He sought injunctive relief and damages.

## I. FACTS AND PROCEEDINGS BELOW

On July 1, 1987, Richards wrote a letter to the prison superintendent claiming that his recent placement in a double cell prevented him from practicing the Thelemite religion. Richards stated that he needed ½ hour of privacy a day because of his Thelemite religion, and stated that the superintendent had two options:

> Set aside a place in the institution where I may go for ½ hour per day to be alone; or, move me to a single cell and I can plan my own time to perform my religious duties.

Appellant's App. at 7–1. On July 13, 1987, Richards filed an Inmate Complaint form containing a similar request: "I will agree to any arrangement the administration cares to make as long as it provides the uninterrupted ½ hour of privacy I need." *Id.* at 10. The superintendent delegated Richards' request to Father Prendergast, the prison's chaplain. On August 7, 1987, Father Prendergast denied Richards' request, stating in a memorandum that:

> It is acceded that your religious preference is Thelemite as stated in your file.

> However, as stated in your memo of July 1, 1987, "it is a private religion where each disciple or aspirant follows his own path without need to congregate or receive any instruction other than that included in books." There seems to be no prescribed religious practices for adherents of the Thelemite religion.

> For this reason and because providing individual space for one-half hour each day or providing a single cell would place an unreasonable burden on the correctional institution, your request is denied.

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

[1] Richards' original complaint did not include his First Amendment claim. Magistrate Goodstein, to whom Richards' case was assigned, did not allow Richards to add a claim for wrongful

death, but noted that if Richards should subsequently die because of defendants' acts, his estate would have the right to amend the complaint in that regard. Richards does not contend that the denial of his proposed pendent claim for wrongful death was erroneous.

Inmate Complaint Investigator Amos Anderson relied on Father Prendergast's report, and also expressed doubt over the sincerity of Richards' religious beliefs, in recommending dismissal of his complaint on August 10, 1987. Richards appealed this decision on August 19, 1987, to the Corrections Complaint Examiner, Charles Miller. Before Miller responded, Richards was moved back to a single cell on September 2, 1987. Although Richards' internal complaint was now moot, Miller filed a report on October 14 recommending that the complaint be dismissed. In his report Miller doubted the sincerity of Richards' religious beliefs as well as the legitimacy of the Thelemite religion, equating it with a "libertine philosophy."

Richards appealed Miller's decision on November 19, 1987, by filing a request for Departmental Review. Acknowledging that he was now in a single cell, Richards stated that an appeal was necessary in order to forbid the prison from placing him in a double cell again without making allowances for his Thelemite beliefs. His administrative appeal was denied by both the Administrator for the Division of Corrections and the Secretary of the Department of Health and Social Services.

At the time of Richards' double-celling, some five to thirteen cells were unoccupied. These cells, however, were necessary for processing prisoners from the Dodge Correctional Institution who could not be reviewed immediately pending review under Wis.Admin.Code § HSS 309.39. The parties agree that a pass system was in effect that allowed all prisoners access to the prison chapel as long as a regularly scheduled event was not in progress.

Magistrate Goodstein recommended that defendants' motion for summary judgment be granted on the plaintiff's Eighth Amendment claim concerning double-celling with a dangerous inmate who may have had AIDS (there was no evidence that his cellmate in fact had AIDS). As to possible exposure to the AIDS virus, the magistrate concluded that plaintiff was barred by the doctrine of collateral estoppel since he had lost an identical claim in *Harris v. Whitmore*, No. 87–C–40–5 (W.D. Wis. August 18, 1988). The magistrate also decided that double-celling was not unconstitutional under the Eighth and Fourteenth Amendments, citing *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59, which upheld placing two inmates in one cell. Therefore he recommended that summary judgment be granted to defendants with respect to Richards' Eighth Amendment claim. But the magistrate recommended that the defendants' motion for summary judgment on plaintiff's First Amendment claim be denied, stating that material issues of fact existed with respect to Thelemite beliefs and whether Richards was sincere in holding them.

A few months thereafter the district judge filed a decision and order with respect to the magistrate's recommendations. The court pointed out that plaintiff did not object to the magistrate's recommendation that the Eighth Amendment claim based on sharing a cell with someone suspected of AIDS be denied and therefore granted defendants summary judgment regarding that claim. As to the First Amendment claim, the court noted that the Waupun Correctional Institution is overcrowded, leading to double-celling, and that overcrowding and the escort time involved would make it too difficult to locate an available private area for Richards to practice his religion alone for 30 minutes daily. The court noted too that plaintiff was only in a double cell for three months (actually two and a half months) and that defendants' decisions about plaintiff, including the inability to accord him a private place to practice his religion during that period, were not shown to be unreasonable, so that summary judgment was justified with respect to plaintiff's First Amendment complaint as well. The court did not reach defendants' qualified immunity defense. We affirm the district court's decision.[2]

---

**2.** Plaintiff on appeal argues principally that the district court erred as to his First Amendment claim. Although he no longer argues that the possibility of his cellmate having AIDS is a violation of his rights, he argues that the Eighth Amendment claim was erroneously dismissed

## II. DISCUSSION

■ A prisoner is entitled to practice his religion as long as doing so does not unduly burden the institution. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir.1990). It is well established, however, that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological objectives." *Id.,* quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282. It follows that Richards' First Amendment rights must be balanced against the prison's legitimate goals. *Hadi v. Horn,* 830 F.2d 779, 783 (7th Cir.1987). In balancing these two interests, this Court has identified several relevant factors, which can be summarized as follows:

1) Is there a legitimate governmental interest underlying the prison officials' actions?

2) Does the prisoner retain alternative ways of exercising the right in question?

3) What impact would accommodation of the asserted constitutional right have on guards, other inmates, and on the allocation of prison resources?

See *Al–Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir.1991).

■ Richards does not challenge a prison regulation but rather challenges the prison's handling of his particular request. Attention must be focused, therefore, on exactly what Richards was requesting when deciding if the prison's response was reasonable here. Richards, in both his letter to the superintendent and on the Inmate Complaint Form, asked for a single cell or, in the alternative, ½ hour per day of uninterrupted privacy. It is undisputed that Richards' request came at a time of overcrowding at the prison, which was in fact the reason Richards was initially placed in a double cell. Richards' request

for a single cell is unreasonable given the unavailability of empty cells, the substantial effect the change would have on the particular inmate forced to give up a single cell for a double cell, and resentment other prisoners in double cells would naturally have because of the granting of such a request.

Richards' request for ½ hour of uninterrupted privacy is similarly unreasonable given the legitimate security and management interests of the prison. Richards in this litigation lists several ways in which his request could have been granted. Each of his alternatives, however, impinges unreasonably on prison officials' management of the prison. Richards argues that he could use one of the unoccupied cells for his religious purposes. But these cells were reserved by law for processing prisoners from the Dodge Correctional Institution. Locating a cell for Richards each day would be an administrative hassle. In addition, a guard would have to monitor the use of the cell. Richards also claims that he could use the chapel for his uninterrupted meditations. No other prisoner had *exclusive* right to the chapel. Granting Richards this right would mean that no one else could enter the chapel when Richards was there. This too would naturally create an administrative burden, would be contrary to the pass system in effect at the prison, and would cause resentment on the part of other prisoners. Richards' suggestion that he could have used a conference room adjoining the chapel or the chaplain's office is unavailing. The record reflects that these rooms were reserved for prison personnel; expanding their use to prisoners would have been unprecedented.[3] In reference to the factors outlined above, it is clear that 1) prison officials were legitimately concerned about orderly prison management and se-

---

on summary judgment, at least insofar as it related to the "totality of the conditions" of his double-celling. Under *Rhodes v. Chapman, supra,* Richards' Eighth Amendment arguments are totally without merit, and we discuss only his First Amendment claim below.

**3.** Moreover, as defendants point out, there was nothing to prevent Richards from engaging in a half-hour religious meditation while his cellmate slept.

curity, 2) accommodation of Richards' request would significantly affect prison procedures and prisoners' morale, and 3) any assertion on Richards' part that he was wholly unable to practice his religion is due to the particular nature of his demands.

The leading case on whether a prison regulation violates an inmate's rights under the Free Exercise clause of the First Amendment is *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282. In that case Muslims were prevented from attending the Jum'ah congregational service held on Friday afternoons because of two New Jersey prison policies. The Court upheld those policies on the ground that they bore a rational connection to legitimate governmental interests in institutional order and security. Here too prison officials acted legitimately in preventing Richards from being placed in a private room for one half-hour religious daily meditation.

It is clear that the prison's decision not to make a single cell, room or the chapel available to plaintiff was a legitimate penological decision and did not reflect on Richards' Thelemite religion.[4] Consequently we are to defer to defendants' expert judgment. *Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447, quoting *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495.[5] Because there are no genuine issues of material fact considering the reasonableness of the prison officials' actions in this case, the district court correctly granted summary judgment for the defendants.

Judgment affirmed.

RIPPLE, *Circuit Judge*, dissenting. For the reasons set forth by the magistrate judge in his report and recommendation, I do not believe that summary judgment was appropriate on this record. I note that this court has stated emphatically "[t]he rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations." *Al–Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir.1991). It is also worth remembering Judge Flaum's admonition in *Williams v. Lane*, 851 F.2d 867 (7th Cir.1988): "Although we customarily defer to their professional judgment in matters of administration, prison officials whose actions are challenged cannot avoid court scrutiny by reflexive, rote assertions that existing conditions are dictated by security concerns, and that the cost of change is prohibitive." *Id.* at 886 (Flaum, J., concurring).

---

**4.** Richards argues that the prison officials did not take his religious beliefs seriously and that this failing infected their decision to deny him his requests. We agree that the comments in Anderson's and Miller's reports rather unthinkingly reflect doubts about Richards' sincerity, even though Richards' file indicated that he had been a Thelemite for at least 12 years prior to his request, and he offered documentation of the religion's authenticity, including evidence of its tax-exempt status. In the future Waupun officials should not act so cavalierly, even though constitutional violations did not occur here.

Despite the rejection of Richards' religion by Anderson and Miller, summary judgment for defendants is appropriate in this case. We note initially that defendants have conceded on appeal that Richards' religious beliefs were sincere and that the Thelemite religion is bona fide. More importantly, Father Prendergast—the first prison official to examine Richards' request—acceded that Richards' beliefs were sincere and based his decision on concern for disruption of established prison procedures. It is the reasonableness of this position that is at issue on appeal, not the sincerity of Richards' beliefs.

**5.** Since the prison officials reasonably concluded that granting Richards' request would not be consistent with orderly confinement or the security of the institution, DOC § 309.61, Wisconsin Administrative Code (dealing with religious practices in prisons and quoted at Appellant's App. 9–20) does not support Richards.