UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD DAVID COOPER,
Plaintiff-Appellant,

v.

RICHARD A. LANHAM; MARIA
MAXIMO; NANCY WILLIAMS;
LLOYD L. WATERS, Warden;                     No. 97-7183
M. TILLIAM, Chaplain,
Defendants-Appellees,

and

SEWALL SMITH,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-92-2464-JFM)

Submitted: March 17, 1998

Decided: May 7, 1998

Before MURNAGHAN and LUTTIG, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Howard L. Cardin, Mark L. Gitomer, CARDIN & GITOMER, P.A.,
Baltimore, Maryland, for Appellant. J. Joseph Curran, Jr., Attorney

General of Maryland, Stephanie Lane-Weber, Assistant Attorney
General, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard Cooper, a Maryland inmate and practicing orthodox Jew,
appeals the district court order dismissing his claim that the refusal of
various officials in the Maryland Department of Corrections to pro-
vide him kosher meals violated his First Amendment right to the free
exercise of his religion. This court reviews a district court order grant-
ing summary judgment de novo. See Jones v. Wellham, 104 F.3d 620,
626 (4th Cir. 1997).

A prison regulation which infringes upon a prisoner's constitu-
tional rights will nevertheless be upheld if the regulation is "reason-
ably related" to promoting a legitimate penological interest. Turner v.
Safley, 482 U.S. 78, 87 (1987). The plaintiff bears the ultimate burden
of showing a prison regulation is unconstitutional. See Covino v.
Patrissi, 967 F.2d 73, 79 (2d Cir. 1992); see also Hause v. Vaught,
993 F.2d 1079, 1082 (4th Cir. 1993). The test used when determining
whether a regulation is permissible assesses four factors: (1) whether
the regulation is logically connected to the legitimate government
interests invoked to justify it; (2) whether an alternative means of
exercising the right on which the regulation impinges remains open
to prison inmates; (3) the impact that accommodation of the asserted
rights will have on prison staff, other inmates, and the allocation of
prison resources; and (4) the absence of ready alternatives that fully
accommodate the prisoner's rights at de minimis cost to valid peno-
logical interests. Turner, 482 U.S. at 89-90. In applying the Turner
test, this court must "respect the determinations of prison officials."
United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991).

2

Applying the Turner factors, we find that the Defendants' refusal to provide Cooper kosher meals is reasonably related to promoting legitimate penological interests. First, there is a logical connection between the prison regulation and the legitimate governmental interest that justifies it. Defendants have demonstrated that MDOC's food services program is designed to allow mass production of food and that it is economically and administratively unable to accommodate the special dietary requests of the over forty religious groups represented in the inmate population. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (finding a prison had a legitimate interest in running a simplified food service).

Second, this Court must assess whether Cooper has an alternative means by which he may practice his religion. "The relevant inquiry under this factor is not whether [Cooper] has an alternative means of engaging in the particular religious practice that he or she claims is being affected," but whether Cooper has been denied all means of religious expression. Ward, 1 F.3d at 877 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-52 (1987)). Here, Cooper does not allege that prison officials are depriving him of his free exercise rights in any other fashion. Therefore, this Court can assume that Cooper's practice of Judaism is not entirely circumscribed in the prison, "and that this factor . . . compensates for the prison's failure to satisfy [his] dietary demand." Kahey v. Jones, 836 F.2d 948, 951 (5th Cir. 1988).

Considering the third factor, Defendants have made a substantial showing that providing Cooper with a kosher diet will have a substantial impact on prison officials, inmates, and on prison resources. The cost of providing kosher meals to Jewish and Muslim inmates is significant. (JA 79, 85-97). In addition, the Defendants expect that providing Cooper with a kosher diet will prompt other inmates of different religious denominations to make similar requests. See Udey v. Kastner, 805 F.2d 1218, 1220-21 (5th Cir. 1986) (noting likelihood that if one dietary request is granted similar demands will proliferate). MDOC cannot afford to honor these requests, and providing special diets to some inmates and not to others would violate the prison's religious directives which is to treat all religions equitably. Further, any perceived differential treatment among the inmate population poses a threat to prison administration. See Kahey, 836 F.2d at 951 (recognizing failure to accommodate other prisoners' requests would have an

3

adverse impact on prison morale); see also O'Lone, 482 U.S. at 353 (noting that special arrangements lead to perceptions of favoritism). Hence, the third Turner factor weighs in favor of the prison.

As to the final factor--the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interest, the Defendants allege there are no ready alternatives to their current food policy due to the financial and administrative costs of providing kosher meals. Indeed, the Defendants have put forth evidence demonstrating the substantial costs associated with purchasing, storing, and preparing kosher meals. Cooper, however, alleges that there are ways that he could receive kosher meals at no cost to MDOC. The record reflects that the Jewish Big Brother League ("JBBL") is willing to pay for and deliver pre-packaged frozen kosher meals to MDOC. Alternatively, JBBL is willing to provide volunteers to prepare kosher meals in the prison kitchen, or pay MDOC the costs associated with having MDOC kitchen personnel prepare kosher meals.

In response to Cooper's suggestions, Defendants have put forth evidence demonstrating that the already strained kitchen facilities at MDOC are not equipped to handle the preparation and storage of special meals, there are hidden costs associated with Cooper's suggestions, and that Cooper's suggested alternatives do not address MDOC's broader concern of treating all inmates in a uniform manner. This court must give substantial deference to prison officials with respect to matters of institutional administration, see O'Lone, 482 U.S. at 353, and Cooper offers no evidence refuting MDOC's claim that his proposed alternatives are cost and administratively infeasible. Therefore, despite Cooper's proposals, he has failed to demonstrate that MDOC's decision to stop providing kosher meals is not reasonably related to legitimate penological interests.

Accordingly, we find that MDOC's refusal to provide kosher meals does not violate Cooper's First Amendment right to free exercise of his religion, and we affirm the district court order granting Defendants' motion for summary judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4