Robert P. DEHART

v.

Joseph LEHMAN, Donald Vaughn, Lawrence Reid, Thomas Stachelek, Bessie Williams, and Mary Ann Williams.

No. CIV. A. 95–3633.

United States District Court, E.D. Pennsylvania.

June 23, 1998.

Robert DeHart, Waynesburg, PA, pro se.

Emily J. Lawrence, Morgan, Lewis and Bockius, Philadelphia, PA, for Robert De-Hart.

Claudia M. Tesoro, Office of Atty. Gen., Philadelphia, PA, for Joseph Lehman, Donald Vaughn, Lawrence Reid, Thomas Stachelek, Bessie Williams, Mary Ann Williams.

## MEMORANDUM–ORDER

CLIFFORD SCOTT GREEN, Senior District Judge.

Presently before this court is the Motion for Summary Judgment of Defendants Joseph Lehman, Donald Vaughn, Thomas Stachelek, Bessie Williams, and Mary Ann Williams, Plaintiff Robert DeHart's response thereto, and Defendants' Reply Memorandum.[1] Plaintiff DeHart alleges his rights under the First and Fourteenth Amendments were violated when (1) Defendants Lehman, Vaughn, Stachelek, B. Williams and Reid denied his request for a vegetarian diet that comported with his Buddhist beliefs and (2) Defendants Lehman, Vaughn and M. Williams denied his request that he be exempt from the requirement that all inmates wear leather shoes while in transport and during court appearances.[2] Plaintiff DeHart seeks damages under 42 U.S.C. § 1983. For the reasons set forth below, Defendants' Motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff DeHart is currently incarcerated at the State Correctional Institution ("SCI") at Greene. From December 21, 1983 until April 24, 1995, Plaintiff was incarcerated at SCI Graterford. In the early 1980s, Plaintiff became interested in Buddhism and now considers himself a follower of Mahayana Bud-

dhism. Plaintiff believes that as a Buddhist, he cannot consume or have any contact with animal flesh, dead animals, or animal byproducts. (Defs.' Ex. 10, p. 118.) Accordingly, in an effort to comply with his Buddhist beliefs, Plaintiff requested two accommodations by the prison system: 1) that he be provided a vegetarian diet totally devoid of animal and dairy products and byproducts; and 2) that he not be required to wear leather shoes.

### A. Diet Request

On July 18, 1992 in a written letter addressed to Defendant Stachelek, then SCI Graterford's Deputy Superintendent, Plaintiff requested that he be provided a strict vegetarian diet totally devoid of animal product or byproduct, garlic, onion and all dairy products. (Defs.' Ex. 30.) In addition to these foods, Plaintiff stated in his deposition that he cannot have certain vitamin supplements, which may contain calcium derived from pulverized animal bones or sea shells, and he cannot have the bread which is typically served in prison because it may contain a preservative which comes from a dairy product. (Defs.' Ex. 10, p. 75, 82.) Furthermore, Plaintiff cannot use certain soaps if the tallow in them is derived from animals. (Defs.' Ex. 10, p. 25.)

After consulting SCI Graterford's Administrative Chaplain who, in turn, sought more information from the Philadelphia Buddhist Association, Defendant Stachelek denied Plaintiff's request on the basis that he had no information that Buddhists are prohibited from eating dairy products such as butter, milk and eggs. (Defs.' Ex. 2.) Plaintiff then turned to the Pennsylvania prison system's formal grievance procedure and filed an official grievance on June 8, 1993. (Defs.' Ex. 3.)

Defendant Bessie Williams, the grievance coordinator who handled Plaintiff's grievance, denied Plaintiff's request for a special diet after consulting the administrative chap-

---

1. Defendant Reid has moved for summary judgment under separate motion.

2. Plaintiff originally attempted to state a claim under Religious Freedom Restoration Act (42 U.S.C. § 2000bb) ("RFRA"). The Supreme

Court, however, in *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), held the RFRA to be unconstitutional. Accordingly, Plaintiff is no longer pursuing his RFRA claim.

lain at SCI Graterford. (Defs.' Ex. 17, p. 8; Ex. 4.) Plaintiff then appealed the decision of B. Williams to Defendant Vaughn, Superintendent of Graterford. (Defs.' Ex. 5.) Vaughn also denied Plaintiff's request after seeking input from the administrative chaplain. (Defs.' Ex. 5, p. 23; Ex. 6.) Plaintiff appealed Vaughn's decision to Defendant Lehman, the Commissioner of Corrections. (Defs.' Ex. 7.) Lehman followed administrative procedure and referred Plaintiff's appeal to the Central Office Review Committee ("CORC"). CORC denied Plaintiff's request after receiving legal input from a staff attorney. (Defs.' Ex. 8.) Lehman designated Defendant Reid, then Executive Deputy Commissioner of Corrections, to review the CORC decision. Reid upheld the previous decisions denying Plaintiff's request. (Defs.' Ex. 8.)

During the grievance process, Plaintiff refused meal trays that contained animal products or byproducts and was eventually admitted to the prison infirmary for a neuromuscular problem caused by the peanut butter and rice diet Plaintiff sustained over a six month period. (Pl.'s Ex. B.) On February 24, 1994, Dr. Sewell prescribed a vegetarian diet of no animal products. (Defs.' Ex. 10, p. 33–35; Pl.'s Ex. C.) Once Plaintiff was moved to the general population, he continued to receive the prescribed diet until he was transferred to SCI Greene on April 23, 1995. In June 1995, Plaintiff filed suit under § 1983 challenging the denial of his special diet request as an infringement on his right to freely exercise his religious beliefs.

### B. Footwear Request

On November 27, 1993 Plaintiff sent a written request to Defendant Lehman asking for an exemption from the requirement that he wear leather shoes. (Defs.' Ex. 21.) After no action was taken on his written request to Lehman, Plaintiff filed a formal grievance in November 1994. (Defs.' Ex. 22.) Defendant Mary Ann Williams, a grievance coordinator, consulted with Defendant Vaughn who told her to deny the request on security grounds. (Defs.' Ex. 20, p. 25.) In Defendant Vaughn's deposition, he stated that the security grounds include the fact that a person attempting to escape could get away faster in sneakers as opposed to prison boots and an inmate is more recognizable in prison boots. (Defs.' Ex. 19, p. 47.) Furthermore, Defendant Vaughn stated in his deposition that he knew Plaintiff to have escaped from prison on a prior occasion. (Defs.' Ex. 19, p. 49.) Plaintiff did, in fact, escape from SCI Huntingdon on March 24, 1983. See Commonwealth v. DeHart, 512 Pa. 235, 516 A.2d 656 (1986).

Defendant Williams ultimately denied Plaintiff's request on two grounds: first, Plaintiff's particular sect probably does not refrain from any apparel made from materials taken from animals, and second, the Department of Corrections had a compelling interest in the care, custody and control of the institution and the inmate population and that the wearing of any other shoes than the type provided would cause a concern of a potential security breach. (Defs.' Ex. 24.) Plaintiff's subsequent appeal of the decision of M. Williams was denied by Vaughn. (Defs.' Ex. 26.) After an appeal to Commissioner of Corrections Horn, Plaintiff was allowed to wear non-leather shoes when transported from the prison for court appearances. (Defs.' Ex. 28.) Plaintiff was, however, transferred on February 8, 1995 in his stockinged feet while his appeal was still under review. (Defs.' Ex. 34.) Plaintiff filed suit under § 1983 challenging the denial of his request to wear non-leather shoes as an infringement on his right to the free exercise of his religious beliefs.

## II. DISCUSSION

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence presented must be viewed in the light most favorable to

the non-moving party. *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983).

The Defendants present four arguments to support their Motion for Summary Judgment: A) moving Defendants did not violate Plaintiff's First Amendment rights; B) with the exception of Defendant Stachelek, moving Defendants were not personally involved in their challenged conduct and, therefore, cannot be held liable under § 1983; C) Defendants are immune from suit under the doctrine of qualified immunity; and D) Plaintiff was not denied equal protection of the law.[3]

### Qualified Immunity

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established constitutional right. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997). Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact exists as to the objective reasonableness of the defendants' belief in the lawfulness of their actions. *Id.* Thus, this court will first turn to the question of whether the Plaintiff has met his initial burden of showing that the Defendants' actions violated a clearly established constitutional right.[4]

In assessing whether the law was clearly established on a particular issue, the court must examine decided case law. *See Abdul–Akbar v. Watson*, 4 F.3d 195, 202 (3d Cir. 1993). The Third Circuit has adopted "a broad view of what constitutes an established right of which a reasonable person would have known." *Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3d Cir. 1989) (citations omitted). The Third Circuit does not require strict factual identity between applicable precedent and the case at issue. *Id.* (citation omitted). However, there must be "some but not precise factual correspondence" between the relevant precedents and the conduct at issue. *Id.* (citations omitted). Officials are expected to "apply general, well-developed legal principles." *Id.* (citation omitted).

■ The acts complained of in this case which relate to the diet issue occurred between July 18, 1992 and February 24, 1994. Case law prior to July 18, 1992 reveals that courts had found that inmates have a right, in general, to sufficient food to sustain them in satisfactory health consistent with their religious beliefs. *See, e.g., Hunafa v. Murphy*, 907 F.2d 46 (7th Cir.1990) (reversing summary judgment for defendants where Muslim in disciplinary segregation denied non-pork diet); *Kahane v. Carlson*, 527 F.2d 492 (2d Cir.1975) (holding Orthodox Jewish inmates are entitled to a kosher diet). Prior to July 1992, however, courts had also rejected requests for highly specialized diets because they conflicted with legitimate penological interests. *See Kahey v. Jones*, 836 F.2d 948 (5th Cir.1988) (holding prison not required to prepare highly particularized religious dietary request to accommodate Mos-

---

3. Defendants raise the issue of a possible Equal Protection claim because Plaintiff stated in his Complaint that Defendants "impermissibly promoted one sect and doctrine of Buddhism over another." (Defs.' Ex. 13, ¶ 55.) Plaintiff states in his Response, however, that he only asserts claims for a denial of the right to exercise freely his religious beliefs under the First and Fourteenth Amendments. To the extent Plaintiff has raised an Equal Protection claim, he has failed to produce any evidence to support such a claim.

4. Where practicable or expedient a court should address whether the plaintiff has alleged a cogni-

zable constitutional claim at all, before turning to the question of whether the constitutional right was asserted was "clearly established." *Acierno v. Cloutier*, 40 F.3d 597, 606 n. 7 (3d Cir.1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). However, a court may decide a case on the ground that appears to offer the most direct and appropriate resolution, which in difficult constitutional cases will sometimes be whether the constitutional right was "clearly established" at the time the defendant acted. *Id.*

lem inmate); *Cooper v. Rogers,* 788 F.Supp. 255, 258 (D.Md.1991), *aff'd,* 959 F.2d 231 (4th Cir.1992) (denying Orthodox Jewish inmate's request for catered kosher breakfast did not violate free exercise provision of First Amendment).

Although a general constitutional right to receive a religious diet was recognized in the law at the time of the alleged violation, the case law reveals that the contours of that right were not clearly established. The cases cited by Plaintiff offer no factual correspondence to the conduct at issue in the present case because the present case involves an inmate's request for a highly specialized vegetarian diet. Moreover, Plaintiff's request more closely resembles a case such as *Kahey* where the prison was not required to accommodate the inmate's request. Thus, at the time of the alleged violation, the state of the law was uncertain, and it cannot be said that the Plaintiff's right to receive a highly specialized vegetarian diet was so clearly established that a reasonable prison administrator would have known that the failure to provide such a diet was a constitutional violation.

Furthermore, evidence presented by Defendants suggest that their refusal of Plaintiff's request was made in good faith because they made an effort to obtain sufficient information to decide whether or not to grant Plaintiff's dietary requests. Defendants consulted the administrative chaplain who, in turn, sought more information from the Philadelphia Buddhist Association. Additionally, the CORC consulted a staff attorney who reviewed and endorsed their decision. (Defs.' Ex. 14; Ex. 15.) Because the advice of counsel was sought before action was taken, Defendants' claim of qualified immunity is strengthened. *See Lee v. Mihalich,* 847 F.2d 66, 72 (3d Cir.1988). Based on Defendant's good faith effort to inform themselves and the uncertain state of the law regarding the right to a highly specialized vegetarian diet, Defendants are entitled to qualified immunity from Plaintiff's claim that his constitutional rights were violated when Defendants denied his dietary request.

■ On the issue of the footwear, the alleged constitutional violation occurred on February 8, 1995. At the time of the alleged violation, courts had recognized the rights of inmates to wear headgear and face beards. *Young v. Lane,* 922 F.2d 370 (7th Cir.1991) (policy of allowing Jewish inmates to wear their yarmulkes only inside cell and during religious services was reasonably related to legitimate penological interests); *Ross v. Coughlin,* 669 F.Supp. 1235, 1241 (S.D.N.Y. 1987) (where inmate religiously required to wear a beard, forcing plaintiff to cut his facial hair stated claim for violation of his free exercise rights). However, courts had also imposed restrictions on religious clothing and other items. *See Benjamin v. Coughlin,* 905 F.2d 571 (2d Cir.1990) (prison regulation restricting the wearing of "crowns" by inmate Rastafarians did not violate the First Amendment because crowns posed legitimate security concerns for prison officials); *Cole v. Flick,* 758 F.2d 124 (3d Cir.1985) (prison regulation that required prisoner who was half-blooded Cherokee Indian to maintain his hair length above the collar did not invalidly infringe upon his right to exercise freely his religious beliefs under the First Amendment).

Plaintiff has failed to offer any case law demonstrating that his right to refuse to wear leather boots was a clearly established constitutional right at the time the alleged violation took place. Rather, the case law appears to hold that certain restrictions on clothing, hair or religious items will not infringe upon inmates' constitutional rights if reasonably related to legitimate penological objectives. The state of the law regarding an inmates constitutional right to wear or refuse to wear leather shoes based on his or her religious beliefs is unclear. In the absence of factually similar case law dealing with an inmate's right to reject standard issued leather footwear for canvas footwear, Defendants are entitled to qualified immunity from Plaintiff's claim that his constitutional rights were violated when he refused to wear leather boots and was transported in his stockinged feet.

## III. CONCLUSION

This court concludes that the constitutional rights alleged to have been violated by the

Defendants were not clearly established in the law at the time the alleged violations occurred. Because Plaintiff has failed to show that the Defendants' conduct has violated some clearly established constitutional right, this court need not reach the issue of whether the Defendants' actions were objectively reasonable under the circumstances.[5] Accordingly, Defendants are entitled to qualified immunity from Plaintiff's claims under the First Amendment, and Defendants' Motion for Summary Judgment is granted on all counts.

An appropriate Order follows.

### ORDER

AND NOW, this 23rd day of June, 1998, upon consideration of the oral argument; the Motion for Summary Judgment of Defendants Joseph Lehman, Donald Vaughn, Thomas Stachelek, Bessie Williams, and Mary Ann Williams; Plaintiff Robert De-Hart's Response thereto; and Defendants' Reply, IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendants Lehman, Vaughn, Stachelek, B. Williams, and M. Williams is GRANTED on all counts.

---

**5.** While the court need not reach the question of whether the Defendants' conduct was objectively reasonable, the evidence submitted in the Motion for Summary Judgment and Response thereto would permit only one finding that the Defendants' conduct was, indeed, objectively reasonable under the circumstances.